No. 73.—PHILIP T. SCHLEY, plaintiff in error, *vs.* JONATHAN
Lyon and FRANKLIN RUTHERFORD, trustees of MARTHA BED-
INGFIELD, defendants.

[1.] Where property was conveyed to trustees for certain specified objects, as
stated in the trust deed: *Held*, that where there was something to be done
by the trustees, to accomplish the objects of the trust, the same was not ex-
ecuted but executory.

[2.] Where an action of trover is brought by trustees in whom the legal title
is vested, for a conversion of the trust property, and they allege in their de-
claration, that they sue "for and in behalf" of one of the *cestui que trusts*, the
trustees are the real parties plaintiff in the action, and the words "for and
in behalf" of the *cestui que trust*, will be regarded as surplusage.

[3.] In an action of trover by trustees, in whom the legal title was vested, for
the recovery of a negro, against a wrong-doer who had converted the trust
property to his own use, the general rule is, that the measure of damages is
the value of the property at the time of the conversion, and the value of the
hire of the negro from that time up to the time of the trial.

[4.] In an action of trover, where the property sued for is not of a fixed and
determined value, but fluctuates in price, evidence may be given to the Jury
of the value of the property at the time of the trial, as well as at the time of
the conversion.

[5.] In an action of trover by a bailee, or special property-man, against the
*general owner*, the measure of damages is the value of his special property
only; but when the action is by the bailee or special property-man, against
a *stranger* or *wrong-doer*, the plaintiff is entitled to recover the full value of
the property converted by the defendant, and hold the balance, beyond his
own interest, for the general owner.

[6.] In order to prove the advertisement of a Sheriff's sale in one of the pub-
lic gazettes of this State, as required by law, the production of the newspa-
per in which the advertisement was published, is the best evidence; but if
that cannot be done, in the exercise of ordinary diligence, then a copy of
the advertisement, taken from the paper of file in the publisher's office, ve-
rified by the oath of the publisher, is admissible.

Trover, in Washington Superior Court, December Term,
1848. Tried before Judge HOLT.

On 13th October, 1831, John H. Bedingfield executed the fol-
lowing instrument :

" GEORGIA, WASHINGTON COUNTY :

" Whereas, a matrimonial contract was, on the 17th day of
December, in the year 1829, duly and legally solemnized between
John H. Bedingfield and Martha Lyon, both of the County and

State aforesaid; and John H. Bedingfield is desirous of settling upon the said Martha Bedingfield, the wife of the said John H. formerly Martha Lyon, a certain portion of property, consisting of the following negroes, to wit: Tom or Thomas, Clarissa, Emeline, Susan, Caroline, and Rosetta:

" Now, know all men by these presents, that I, John H. Bedingfield, for and in consideration of the trust and confidence reposed in Jonathan Lyon and Franklin Rutherford, of the County aforesaid, as well as the love, good will and affection which I have for and towards my wife, formerly Martha Lyon, have given and granted, and by these presents do firmly give and grant, unto the said Jonathan Lyon and Franklin Rutherford, the following negroes, as above named, to wit: Tom or Thomas, Clarissa, Emeline, Susan, Caroline and Rosetta, to have and to hold the said six negroes unto the said Jonathan Lyon and Franklin Rutherford upon trust. Nevertheless, that the said Jonathan Lyon and Franklin Rutherford shall well and truly, and without partiality, at the death of the said John H. Bedingfield, secure to the said Martha Bedingfield, the wife of the said John, by any reasonable conveyance, the negroes before named; and in the event of there being issue of the body of the said Martha Bedingfield, that the said Jonathan Lyon and Franklin Rutherford shall equally apportion and divide the aforesaid six negroes, and their increase, between the said Martha Bedingfield, and the heirs of her body, within nine months after the death of said John Bedingfield, if his death should first happen; but if the said John H. Bedingfield should die without issue, and the said Martha Bedingfield should afterwards intermarry, then the said Jonathan Lyon and Franklin Rutherford shall turn over to, and for the use and benefit of, James G. Rives, the brother or half-brother of the said John H. the negroes hereinbefore mentioned, as his right and property; and the said John H. Bedingfield, for the free and more clear disposal of the said six negroes, and their increase, doth covenant to and with the said Jonathan Lyon and Franklin Rutherford, to and for the use of the said Martha Bedingfield, and the heirs of her body, shall have, hold, use, occupy and enjoy, provided, nevertheless, that the said John H. Bedingfield shall continue to use, employ, and reserve, all and singular, the services of the said six negroes, and all and every of them, for and during the full end and term of his natural life, without any trouble to

Schley *vs.* Lyon and Rutherford.

the said Jonathan Lyon and Franklin Rutherford, or either of them; and the said John H. Bedingfield, for the free and more clear disposal of the said six negroes, and their increase, to the said Martha Bedingfield, her issue and their heirs and assigns, doth make this reasonable instrument of conveyance, in writing, with a special reservation to the said John H. Bedingfield, as herein before expressed.

"In witness whereof, the said John H. Bedingfield hath hereunto set his hand and affixed his seal, this 13th day of October, 1831.

JOHN H. BEDINGFIELD, [SEAL.]

"Signed, sealed and delivered in presence of

WILLIAM R. KING.<br>JAMES JONES, J. P."

John Bedingfield died in the year 1833. In February, 1833, the negro boy, Tom, was levied on as the property of John Bedingfield, and bought at Sheriff's sale by Philip T. Schley. John Bedingfield left no issue. Within the nine months from the death of John Bedingfield, the trustees named in the deed, "as trustees of Mrs. Bedingfield," brought an action of trover against Philip T. Schley, for the negro boy, Tom. Pending the suit, Mrs. Bedingfield married Wm. S. Dickson; and sometime in the year 1840, the negro boy, Tom, died. Upon the trial at December Term, 1848, the defendant introduced the *fi. fa.* levied on the slave, Tom, with an entry thereon of a general levy on the slave.

Plaintiffs offered in evidence, the depositions of Richard M. Orme, one of the publishers of the "Southern Recorder," for the purpose of proving that the following advertisement was published in the Southern Recorder:

"Will be sold, &c. one negro man, Tom. Levied on the interest of John H. Bedingfield in and to said negro, to satisfy sundry *fi. fas.* &c. December 28th, 1832.

[Signed,]                                    S. A. JONES, Sheriff."

Defendant's counsel objected to this testimony, on the ground that the newspaper itself would be the highest evidence. The Court sustained the objection, and ruled out the evidence. Proper diligence was shown in endeavoring to obtain one of the papers.

Plaintiffs' counsel then proved by E. S. Langmade, that "he went to the office of the Southern Recorder, and there made a

Schley *vs.* Lyon and Rutherford.

copy, from the paper, of the advertisement, and from that copy made the copy on the interrogatory directed to R. M. Orme; and the copy on the interrogatories is a copy of the paper in Milledgeville," and then offered to read this copy in evidence. Defendant's counsel objected,

1st. Because the original paper is within the control of the Court; and

2d. Because it is a copy of a copy.

The Court overruled the objection, and defendant excepted.

Many exceptions were filed to the charge of the Court below, and refusals to charge as requested, but the following only have been relied on in this Court, viz :

1st. Because the Court erred in charging the Jury, that the measure of damages must be the value of the property at the time of the conversion, and reasonable hire until the time of the intermarriage of Mrs. Bedingfield with Wm. S. Dickson.

2d. Because the Court erred in charging the Jury, that the right to hire did not cease after nine months after the death of J. Bedingfield.

3d. Because the Court erred in refusing to charge, that the plaintiffs could not recover in this suit, unless Dickson, who intermarried with Mrs. Bedingfield, had been made a party to this suit.

4th. Because the Court erred in refusing to charge, that the rights of the trustees, suing as they alleged for the use of Mrs. Bedingfield, ceased upon her marriage.

5th. Because the Court erred in refusing to charge the Jury, that the trusts in the deed had been long since executed, and that upon the marriage of Mrs. Bedingfield, the legal and equitable title both vested in Rives, the remainder-man.

I. L. HARRIS and JAS. THOMAS, for plaintiff in error, cited and commented on the following authorities :

5 *East*, 164.   9 *Ib*. 1.   1 *Cruise*, 306.   1 *Eq. Cas. Abr.* 383, 307.   1 *Rand.* 326.   3 *Ves. Jr.* 123, 127.   1 *Pr.. W.* 105, '6, '7, 132, 259.   1 *Kelly*, 390.   *Strong vs. Strong*, 6 *Ala. R.* 345.   *McGowen and Wife vs. Young*, 2 *Stew. Rep.* 276.   2 *Stew. & P.* 160. 8 *Wend.* 509.   5 *Cow.* 17.   2 *Ib.* 460.   20 *John.* 475.   1 *Wend.* 295.   7 *Ib.* 497.   13 *Pick.* 152, 275.

4 *Kent*, 302. *Jones vs. Cole*, 2 *Bailey*, 330. *Fettiplace vs. George*, 1 *Ves. Jr.* 46. *Jarman on Wills*, 252. *Edmondson vs. Dyson*, 3 *Kelly*, 321. *Sedgwick on Damages*, 506.

Q. SKRINE, for defendants in error.

*By the Court.*—WARNER, J. delivering the opinion.

The plaintiffs, as trustees of Martha Bedingfield, instituted an action of trover in the Court below, to recover the possession of a negro slave, named Thomas, which had been converted by the defendant.

The plaintiffs derived their title to the slave, under a deed executed by John H. Bedingfield to them, by which the negro slave, Thomas, with other property, was conveyed, *in trust*, for the settler during his life, and at his death, to be conveyed, by some reasonable conveyance, by the trustees, to the settler's wife, Martha Bedingfield, and her issue, if any, within nine months after the death of said John H. Bedingfield; but if there should be no issue of the said John H. by his wife, Martha, and she should afterwards marry, then the trustees were directed to turn the property over to, and for the use of, James G. Rives, the half-brother of the said John H. Bedingfield. John H. Bedingfield died in the first part of the year 1833, leaving no issue by his wife, Martha.

[1.] The first question made is, whether this trust was executed or *executory* at the time of the *conversion* of the slave by the defendant. The slave was converted by the defendant before the expiration of the nine months from the death of Bedingfield. We are clearly of the opinion, the trust was *executory*, at least, until the expiration of the nine months from the death of Bedingfield, for the reason, that the trustees were required, by the trust deed, to make a *conveyance* of the trust property to the *cestui que trusts* at the expiration of that time—*there was something for the trustees to do. Edmondson and Wife vs. Dyson*, 2d *Kelly's Rep.* 321. At the time of the conversion of the property by the defendant, the absolute legal title thereto was in the plaintiffs.

[2.] The plaintiff in error also insists, that inasmuch as Mrs. Bedingfield married during the pendency of the suit by the trustees against the defendant, that her husband should have been made a party to that suit. Although the suit is in the name of

the trustees, *for and in behalf of Mrs. Bedingfield*, yet, we think it is, for all legal purposes, a suit by the trustees, to recover damages for a conversion of the property by the defendant, as against *their title.* They allege they were possessed of the negro slave, Thomas, as of *their own property*, and that the defendant converted him to his own use, to *their damage* one thousand dollars. The words in the first part of the plaintiff's declaration, "for and in behalf of Martha Bedingfield," may be regarded as *surplusage.*

| | |
|---|---|
| 6 | 535 |
| 118 | 116 |
| ₒ118 | 118 |
| 6 | 535 |
| 121 | 760 |

The suit was properly brought in the name of the trustees, in whom the legal title was vested at the time of the conversion of the slave by the defendant, and the Court below did not err in deciding that the husband of Mrs. Bedingfield was not a necessary party.

The other exceptions taken to the charge of the Court to the Jury, may all be included in one general objection, and that is, to the rule of damages stated by the Court.

The Court below instructed the Jury, that the measure of damages must be the value of the property at the time of the conversion, and reasonable hire therefor until the marriage of Mrs. Bedingfield.

[3.] The general rule in actions of trover is, that the measure of damages will be the value of the property *at the time of conversion*, with interest thereon from that time.    *Wilson & Gibbs vs. Conine*, 2 *Johns. Rep.* 280.    *Bissel vs. Hopkins*, 4 *Cowen's Rep.* 53. The rule of damages for the conversion of negroes, is the value of the property *at the time of conversion*, and the value of their *labor*, in addition to the value of the property from that time. *Banks vs. Hatton*, 1 *Nott & McCord's Rep.* 221. *Hatton vs. Banks*, *Ib.* 223.    The principle on which the Courts proceed in awarding damages in actions of trover is, that the plaintiff is entitled to a *full indemnity* for the injury sustained, by reason of the *wrongful conversion* of his property by the defendant; that the defendant shall not derive any benefit by his own *wrongful act.*

[4.] We do not desire to be understood as deciding, that when the chattel converted is not of a *fixed and determinate* value, evidence may not be given of its value, as well at the time of the trial as at the time of the conversion; for such evidence, when the value of the chattel *fluctuates*, would, in our judgment, be admissible.    *Greening vs. Wilkinson*, 11 *Eng. Com. Law Rep.* 499. *West vs. Beach*, 3 *Cowen's Rep.* 83.

The plaintiff in error, however, contends, that notwithstanding the legal title to the property may have been in the trustees at the *time of the conversion by the defendant*, when the nine months expired after the death of Bedingfield the trust was *executed*, the legal and equitable title to the property then vested in her, and the plaintiffs, as trustees, were only entitled to recover hire for the negro, until the expiration of the nine months from Bedingfield's death.   To answer this objection, it is necessary that we should consider the duty and responsibilities of trustees.   It may be admitted as a general rule, that the power of trustees over the legal estate vested in them, exists only for the benefit of the *cestui que trust*.   The trustees in this case were bound to act in good faith, and to exercise reasonable diligence to secure and protect the trust property for the benefit of the *cestui que trusts ;* they were bound to exercise the same diligence with regard to the trust property, as if it had been their own, to prevent any waste or injury being done to it. 2 *Story's Eq.* 510, 512, 516, §§1268, 1269, 1275. If the trustees, with a knowledge that the defendant had converted the slave, Thomas, to his own use, had negligently permitted him to have removed him beyond the jurisdiction of the State, so as to have placed it out of their power to deliver him to the *cestui que trusts*, according to the directions contained in the trust deed, such negligence and careless indifference on their part, would have made them responsible for the value of the slave.   The very object of their appointment was to protect and preserve the trust property for the benefit of those who were entitled to it under the trust deed.   At the time the property was converted by the defendant, the legal title thereto was in the trustees.   They were in duty bound to protect that property, and to use all legal and proper remedies to reduce it to possession, or the proceeds thereof, so as to turn it over to their *cestui que trusts*, in the due execution of the provisions of the trust deed.   Their duty as trustees cannot, therefore, be considered as *fully executed*, until they had a reasonable time, according to the ordinary course of judicial proceedings, to reduce the property to possession, or the damages given by law for a wrongful conversion thereof.   In *Guphill vs. Isbell*, (1 *Bailey's Rep.* 232,) it was held, that the trustee was entitled to the *possession* of the trust property, even against his *cestui que trust*, until the trust was *fully executed* or surrendered by the trustee.   It was also held in that case, that

the trustee was entitled to a lien on the trust property, for all the expenditures incident to the execution of the trust, and that a Court of Equity would not divest him of the possession of the trust property without providing an indemnity. The trustees here, must necessarily have expended money in the employment of counsel, and in the prosecution of the suit against the defendant, for which they are entitled to be remunerated out of the trust property, and a final settlement necessary between the trustees and the *cestui que trusts*, before the trustees turn over to them the entire trust property in their hands, or the proceeds thereof. Whatever may be considered the rights of the respective parties in a contest as between the trustees and the *cestui que trusts*, as to the *right of possession* immediately after the expiration of the nine months from the death of Bedingfield, we are very clear it does not lie in the mouth of the defendant, who is a mere *wrong doer*, who converted the property as against the *legal title of the plaintiffs*, to raise the objection, that the trust was executed in Mrs. Bedingfield.

The defendant *converted* the property of the plaintiffs, and they are entitled, under the general rule of law, to recover the value of the property commensurate with their title at the *time of the conversion*, and the value of the labor of the slave from that time, if not up to the time of the trial, at least to the time of Mrs. Bedingfield's intermarriage, as charged by the Court below. In *Finch vs. Blount*, (32 *Eng. Com. Law Rep.* 591,) which was an action of trover for a horse and cart, evidence was offered on the part of the defendant, under the plea that he did not convert them, to show that the plaintiff was not the real owner of the horse and cart, and although the plaintiff might be entitled to a verdict for damages, such damages ought not, necessarily, to be extended to the whole value of the property. The Court rejected the evidence, and held, that the measure of damages was the value of the property. *Patterson, J.* remarking, "I have never heard, that where property is taken, the plaintiff is to have a farthing damages, and the defendant keep the property—that would be allowing the defendant to take advantage of his *own wrong*." *Cook vs. Hartle*, (34 *Eng. Com. Law Rep.* 528.) Where an action of trover, or trespass, is brought by a bailee of chattels against a *wrong doer*, he is entitled to recover the *full value* of the property as the measure of damages, for the reason that he is answerable

over to the bailor. 2 *Bl. Com.* 452. *Heyden & Smith's Case,* 13 *Coke's Rep.* 69. *Lyle vs. Barker,* 5 *Binney's Rep.* 457. *White vs. Webb,* 15 *Conn. R.* 502. In *Heyden and Smith's* case it was held, "If after taking the goods, the owner hath his goods again, yet he shall have a general action of trespass, and upon the evidence, the damages shall be mitigated. So is the better opinion in 11 *H.* 4, 23, that he who hath a special property in goods, shall have a general action of trespass against him who hath the general property, and upon the evidence, damages shall be mitigated; *but clearly the bailee, or he who hath a special property, shall have a general action of trespass against a stranger, and shall recover all in damages, because that he is chargeable over."*

[5.] The distinction seems to be, that if the action of trover or trespass be brought by a *bailee* or *special property-man* against the *general owner,* then the plaintiff can recover the value of his *special property only;* but if the suit is against a *stranger* or wrong doer, then the plaintiff recovers the *full value* of the property, and holds the balance, beyond his own interest, for the general owner.

The case for the plaintiffs, as made upon the record, is much stronger, in our judgment, than that of a mere bailee who is chargeable over to his bailor. They are not only responsible over to the *cestui que trusts* for the trust property placed in their hands, but were clothed with the *absolute legal title* thereto at the time of the conversion by the defendant.

The Court below did not err in its charge to the Jury, against the plaintiff in error, on this branch of the case.

[6.] There is another ground of error assigned upon the record, and although it does not affect the merits of the case, and will not alter our judgment, yet, as a matter of practice, we think the question ought to be settled. The plaintiffs' counsel in the Court below, offered the testimony of R. M. Orme, one of the publishers of the Southern Recorder, a newspaper in which the Sheriff's sales of Washington County were published, under the law requiring such sales to be published in one of the public Gazettes of this State. The answers of the witness contained a copy of the Sheriff's sale from the newspaper on file in his office, *verified by his oath.* This evidence was objected to and ruled out by the Court.

The plaintiffs' counsel then proved by E. S. Laugmade, that he went to the office of the Southern Recorder, and there made a

·copy from the paper of the advertisement, and from that copy, made a copy on the interrogatories directed to Orme, and that the copy on the interrogatories, was a copy of the advertisement taken from the paper at Milledgeville.   This copy of the advertisement on the interrogatories was objected to, because it was the copy of a copy; but the objection was overruled, and the evidence admitted; whereupon the defendant excepted.   The best evidence of the advertisement of the Sheriff's sale in the public Gazette is, the production of the paper containing the advertisement; but if, in the exercise of ordinary diligence, that cannot be done, then, in our judgment, a copy made out by the publisher of the paper, from the papers on file in his office, *verified by his oath*, would be admissible as the next best evidence. The copy on the interrogatories, made from a copy by Langmade, was improperly admitted in evidence, and the copy made out by Orme, one of the publishers of the paper, from the file of papers in his office, and verified by his oath, was improperly rejected by the Court, provided ordinary diligence had been shown to procure the paper containing the advertisement.

As the rejection and admission of this evidence does not affect the merits of the main question in controversy between the parties, the judgment of the Court below must be affirmed.

Judgment affirmed.