JAMES DORSETT, administrator, &c., plaintiff in error, vs. THOMAS D. FRITH, defendant in error.

In an action of trover, to recover for the conversion of slaves, which have been sold by defendant and cannot be delivered, the purchase money with interest thereon, is a proper criterion of damages, provided the sale has been fair.

F. intermarried with S., a widow, with several minor children. By the consent and counsel of the brothers of his wife, F. received at the same time a negro girl, which he sold, together with her infant child; with the understanding that the debts of the former husband were to be paid out of the proceeds and the children raised and supported. D. one of the brothers-in-law administered many years afterwards, on the estate of the former husband, and brought trover against F. for the negroes.

Held, That upon a bill filed, the administrator was bound to account for the debts and expenses of the estate and family; allow F. to retain his distributive share, and also to deduct the amount of certain demands paid out for one of the children, deceased.

[1.] The acts of an executor, de son tort, will be upheld, if they are such as the regular executor would be bound to do.—BENNING, J.

[2.] When the conversion is not a continuing one, but begins and ends in a single act, as a sale, the value to be taken as the measure of the damages is the value at the time of this act.—BENNING, J.

Equity, from Randolph. Tried before Judge KIDDOO, May Term, 1858.

William D. Siller, died leaving his wife Maria and three children, Lorenzo, Eldridge and William. He was possessed at the time of his death of one negro slave by the name of Feraby, about twelve years old. Thomas D. Frith intermar-

ried with the widow of the deceased, and took possession of said negro, and raised the said children of deceased; the marriage was in ————. James Dorsett, the brother of the widow of deceased, administered on the estate of said William D. Siller long after the marriage, and brought an action of trover against Frith for the negro girl.

Frith filed a bill, praying for an injunction to restrain the suit, &c., alleging that Siller died, leaving the widow and three children, that he intermarried with the widow and supported and educated the children of deceased, and paid the debts of the said widow, amounting to about seventy dollars, that he took possession of the negro girl at his marriage, and believed her to be, and claimed her as his own, but found and took possession of no other property at the time or since, of the deceased; that James and John Dorsett are brothers of his wife Maria, and that after the death of Siller, they advised her, that they had in their hands assets enough to pay the debts of the estate of her husband, belonging to said estate, and would pay them, and advised her to take the negro girl Feraby and try and raise the children, that the estate was not worth the expense of administration, and that after his marriage, the said negro girl remained in his possession about five years, and was sold by the consent of his said wife; and with the knowledge of the said Dorsett; that he treated the children of said deceased as he did his own; that William Siller was sick and a constant trouble and expense, and that in 1853, he boarded him and paid tuition for him at an expense of $48 40; that for the ten years he took care of William, $660 would have been a poor compensation for the food, nursing, clothing and doctor's bill, he furnished for him, that William's services were worth nothing to him, that he paid out a good deal of money for Lorenzo's debts, after he died; that his services were worth his boarding and schooling to him; that there are no debts due and owing to and from the estate of W. D. Siller deceased, requiring administration, &c.

The material facts in the bill, were put in issue by the

answer, and on the trial, both cases trover and equity, were tried together for the purpose of having an account between the parties.

With other evidence counsel for complainant introduced various notes and accounts against Lorenzo D. Siller, and proved that they had been paid off by complainant after the the death of said Lorenzo. Defendant objected to the introduction of the same. The Court overruled the objection, and defendant's counsel excepted.

Counsel for defendant proposed to prove the value of the negro woman Feraby, and the value of her hire, from the sale by Frith up to the time of the trial, annually, and the number and ages of her children, and their value, and the value of their hire annually. To which complainant's counsel objected.

The Court sustained the objection, and defendant's counsel excepted.

The Court charged the jury, that if complainant upon his marriage with Mrs. Siller, took possession of the negro girl belonging to the estate of her deceased husband, and took charge of her children and has treated them as a father ought to treat his own children, he ought now only to be held to account fairly with them.

In the opinion of the Court, it would be equitable and right to charge Frith with the annual hire of the negro up to the time of her sale, and interest thereon to date, deducting the expense of raising her, if any; add what she and her child sold for if the sale was a fair one, otherwise what she was worth at the time of the sale, with interest, until date; set off three-fourths for the Siller boys, and add the annual value of them with interest. Place to the credit of Frith the expense of maintaining and educating the boys, and the sums he paid for William, after his death, with interest. If a balance be found against Frith, find that amount for the administrator. If no balance, then decree that the action of trover be perpetually enjoined.

To which, and to the decision of the Court, in permitting the account of A. O'Brien against Lorenzo to go to the jury, on the proof of O'Brien's handwriting, defendant's counsel excepted. And on these several exceptions, error is assigned.

TUCKER; and E. DOUGLAS, for plaintiff in error.

GEO. S. ROBINSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This is the second time this case has been before this Court; and to be justified in sending it back again, we should be clearly satisfied, not merely that injustice *may* have been done, but that the plaintiff in error has *actually* been wronged. How frequently are these little properties consumed by protracted litigation—the greatest curse that can be inflicted on parties.

And so far from right's not having been done, we have every reason to conclude, under the charge of the Court, that the contrary is true.

What are the facts? Mr. Siller dies, leaving a widow and three small children, and a negro girl of twelve years of age. No administration is taken out upon his estate, by his brothers-in-law, or by any body else. Frith intermarries with the widow. He raises the children as his own. The girl has one child and upon consultation with his wife, Frith concludes to sell the negroes. The fact, that in right of his wife, he was entitled to one-fourth of the price, is the surest guarantee that she and the child brought their value. Frith settles the outstanding debts against the estate and rears the children. One of them dies before there is any accounting with him by Frith; and Frith discharges this son's debts, the proof showing that he had agreed to do so, in Lorenzo's life time, and at the time they were contracted.

Dorsett, adm'r, vs. Frith.

At a distant day, when the children are raised, the Dorsetts are induced to come forward and administer on the estate of their deceased brother-in-law. Knowing of the sale made by Frith years and years before, they bring an action of trover against him to recover the negroes. They knew of the sale at the time it was made, and did not object.

What was the measure of damages to which they were entitled? I answer confidently, that in a case like this, where it is impossible to deliver the property, that the value at the time of sale, with the interest thereon, is the rule sustained by the current of cases, English and American. I am aware, that numerous dicta may be found which seem to indicate a different doctrine. I will not say, that there are not adjudicated cases to the contrary. But upon examination, I apprehend it will be found, that whenever the books speak of the highest value from the date of the conversion to the time of trial, as the measure of damages, they refer to cases in which it is possible to deliver the property in discharge of the verdict. And so the Judge instructed the jury that if they should find the sale was not fair, they might award the present value of the negroes. No doubt it was fair, it being the interest of the vendor to get the highest price. We assume then, that the criterion of damages was properly submitted. Hire to the time of sale, the purchase money with interest since; more I doubt not, than the annual hire would have amounted to.

Shall it be asked, shall a *tort feasor* be dealt with as though he was clothed with authority to make the sale? We reply, no more than this could be recovered against an *executor de son tort;* and this is the most that can be made of Frith, and that too, only· as to three-fourths of the property. He owned the other fourth. He was a joint tenant of the whole. So much for the trover action.

As to the instructions of the Court respecting the equitable set-off to which Frith was entitled, all that was argued and decided when the case was up before. Either we were

wrong then, or the Circuit Court is right now.   All that matter has been properly submitted to a special jury, and we doubt not, that their verdict is nearer right than this Court can make it.

Suppose Frith did pay some of Lorenzo's debts after his death, he had promised to see them paid at the time they were contracted.   But if he had not, should the portion of his stepson be wrenched from his hands, until he was re-imbursed the amount that he had justly expended for this purpose ? To quote the principle, that one cannot make another a debtor against his will, is a misapplication of it to such a case. What are the heirs at law of Lorenzo Siller entitled to ?  The residue or net surplus of his estate, after his debts are paid. And does it matter to them, whether they were paid by Frith, without an administration and without expense to his next of kin, or through an administration ?

We are happy at not finding ourselves constrained to send this case back.   For we may talk as much as we see fit, about breach of trust, usurpation of power, &c., in this case, the key to it is just this: up to the sale of the girl and her child by Frith, all who were concerned in the estate, thought he was managing for the best interest of all concerned.   But the woman it seems, instead of dying or proving barren, or valueless, for any other reason, has turned out to be a most prolific breeder; and as poor Frith for his own sake, as well as the good of his step-children, had not the prescience to foresee this, the result must be visited upon his head.   We are all willing to take wives and contracts and everything else, for *better*, how few for *worse!*   The recollection of the ruin of one honest trustee in this State, has made me slow to repeat the infliction.   He sold ten negroes in January 1837, big and little, young and old, for $10,000. Those were the flush times in Georgia.   He re-invested the proceeds in Railroad Stock at par.   A new guardian was substituted.   The new investment was repudiated, and in the face of an offer to restore the identical negroes with hire—

Dorsett, adm'r, vs. Frith.

which was refused—the $10,000 with interest was recovered thereby bankrupting the old trustee, for a miscalculation, and seriously injuring his security. The wards rejoiced at the sale, but would not abide the re-investment.

Judgment affirmed.

BENNING, J. concurring.

All the questions in this case, except two, were waived. Of those two, the first was, as to whether Frith was entitled to an allowance for the debts of Lorenzo Siller, which he had paid after the death of Lorenzo; and the second was, as to what was the measure of the damages, in respect to the negroes.

Lorenzo's share in the property sued for, exceeded in value the amount of his debts paid by Frith. Frith, therefore, in paying those debts, did not incroach on the shares of the other distributees.

[1.] And the act of payment, was, at most, but the act of an executor *de son tort*, and the acts of an *executor de son tort*, will be upheld, if they are such as the regular administrator would be bound to do.

I think, then, the Court was right in holding, that Frith was entitled to an allowance for the payment of these debts.

Frith, soon after his marrige with Mrs. Siller, sold the negro woman and child belonging to the estate of the late husband of Mrs. Siller. After the sale, the woman had other children, and the child which was a female, also had children.

The Court held, what amounted to this; that the value of the woman and her child, *at the time of the sale*, was, (plus hire,) the value to be taken, as the measure of the damages. Dorsett's counsel objected to this, insisting: First, that the value of the issue born after the sale, should also be taken into the account: Secondly, that, if wrong there, yet, that

the value of the woman and child at the time of the sale, or the value at any time afterwards, up to the trial, might, at the option of the jury, be taken as the measure of the damages.

The time of the sale, for ought that appears to the contrary, was the time of the conversion. The conversion consisted it seems, in the act of sale.

There is a conflict among the authorities, as to whether the jury are confined to the value at the time of the conversion, or are to have the option of taking that, or, some subsequent value. Mr. Sedgewick seems to think, that they are confined to the value at the time of the conversion. *Sedgewick, Meas. Dam.* 481. See *Id.* 475, *et seq.* See too, *Suydam vs. Jenkins,* 3 *Sand.* 614.

This Court has held, that the jury were at liberty to take the value even up to the trial.

The injury consists in the *conversion,* and as long as the conversion endures, the injury endures. Every instant of the conversion may be considered a repetition of the injury. The thing remains the true owner's at the last instant of the conversion, as much as it was his, at the first. But after the wrong doer has parted with the thing to another person, the conversion ceases as to him, and passes over to that person, and abides with him as long as he keeps the thing.

I think, therefore, that the only cases in which, the option exists to the jury, of taking a value subsequent to the first conversion, are the cases in which, the property remains in the possession of the defendant subsequent to that conversion; that is, are cases in which, there is a continuing conversion; and, that in these cases, the option does not extend beyond the time when he parts with the possession; that, if the owner wants to recover by a value taken subsequent to that time, he must elect to sue the person to whom the possession has passed.

In the use of the word, "elect," I do not mean to say, that suing one who converts a female slave, and recovering from

him, is a bar to a suit against a person to whom he may have sold her, for the *issue* of the slave, if she have had issue after she came into the possession of this person. I express no opinion on this point.

It must be apparent from what I have said, that I agree with the Court below, on the question under consideration. The conversion was not a continuing one.

McDonald, J. dissenting.

I dissent on the ground alone, that I think evidence of the value of the woman Feraby and her child, and of her hire from the time of the sale to the time of the trial, ought to have been admitted to go to the jury. The action enjoined was an action of trover. The plaintiff might have waived the *tort*, and sued in assumpsit for the price for which the woman and child were sold. In that event he could have recovered the sum for which they were sold with the interest. But he chose to proceed *in tort*. The defendant in trover was a wrong-doer and the plaintiff ought not to have been damnified by his *tort*, even if the defendant derived no advantage from it, further than the then value of the negro. The English rule of damages affords no just criterion here, in suits for the recovery of slaves, because they have no slaves there. A case like the one before us, of the conversion of a female slave and her child, constant increasing in value, is unknown in the English law. But apply a *principle* of the English law to this case, and there is no difficulty: If a case be such that either the person who *commits*, or the person who *suffers* the wrong must lose, the loss must fall on the wrong-doer. The defendant should make complete reparation for the wrong which he had committed. If he had not sold the negro, the administrator would have been entitled to receive from him the negroes as they were at the time of the trial. Should the *tort* of defendant put him in a worse condition? I think Judge WARNER, in delivering the

opinion of the Court in the case of *Schley vs. Lyon & Rutherford*, 6 *Ga.* 535, stated the principle of the Court in awarding damages in actions of trover to be, "that the plaintiff is entitled to a *full indemnity* for the injury sustained, by reason of the *wrongful conversion* of his property by the defendant; that the defendant shall derive no benefit from his own wrongful act."