Carroll v. Evans.

## JACOB CARROLL v. LEWIS EVANS.

A. executed to B. his written receipt for certain live stock to be kept by A. in partnership with B. for the purpose of raising and selling stock, &c. Afterwards, B. assigned and transferred by endorsement his right, title and interest in the receipt to C., for the purpose of enabling C. to obtain from A. money or stock in payment of an indebtedness due C. from B. *Held,* that the legal effect of the assignment was to dissolve the partnership between A. and B., although that was not the intent or understanding of any of the said parties.

After the dissolution of the partnership by operation of such assignment, A., having delivered a portion of the partnership stock to C., retained the remainder of it in trust for himself and B.; and until A. renounced such trust and claimed the property as his own adversely to B., the statute of limitations did not begin to run against the liability of A. to B.

The jury, having retired to consider of their verdict, returned into court and reported that they could not find from the evidence the amount of sales of the partnership stock made by the defendant, nor the number and value of the stock in the defendant's possession at the commencement of the suit; whereupon they were verbally instructed by the court that, in finding their verdict, they could consider their own knowledge of the value and increase of such stock, in judging of the evidence; which verbal instruction was excepted to by the defendant. *Held* not to be error, when properly construed and taken in connection with the circumstances of this case.

It is not obligatory on this court to reverse a judgment which has been rendered in the court below for the money value of the property sued for, because the judgment would have been more properly rendered in the alternative, that is, for the property itself, or, on failure to deliver it, for its value, when the assignment of errors does not raise the question.

APPEAL from Lavaca. Tried below before the Hon. G. W. Smith.

This action was brought by Evans, the appellee, against Carroll, the appellant, on the 17th of March, 1857, in the District Court of Gonzales county. After two trials in that county, both resulting in judgments for the plaintiff, and both set aside on motions of the defendant for new trials, the venue was changed to the county of Lavaca.

In his petition, the plaintiff alleged that in the fall of the year 1848, preparatory to the formation of a partnership between him-

Carroll v. Evans.

self and the defendant Carroll, he sent and delivered to said Carroll a lot of mares and colts, stallions, jacks, mules, sheep and goats. That, on the 1st of January, 1849, the said Carroll, who then resided in De Witt county, entered into a co-partnership with petitioner, and executed and delivered to him a " written obligation in relation to said co-partnership," by which said Carroll acknowledged himself to be in possession of two hundred mares and colts, twenty-two mules, three hundred and fifty head of sheep and goats, one stallion, one American and three Spanish jacks, and a note for five hundred and fifty dollars on one Richard Chisholm, which stock and note were the joint property of the said Carroll and petitioner. That by his said obligation, the defendant Carroll agreed that " the said property should remain in the same situation" until he and petitioner, or their representatives, might think proper to divide the same and its increase; and further agreed to keep an account of sales and expenditures, and to pay and account to petitioner for his equal share of the proceeds, increase, &c. That at the time of executing this written obligation or receipt, the said Carroll was in possession of all the partnership effects, which had been received by him from petitioner as co-partnership property. That the said property was then of the aggregate value of $17,300. That the partnership has never been dissolved; that the said live stock did well and made the usual and customary increase; that said Carroll had from time to time, and from year to year, made sales of portions of the increase, amounting in the year 1851 to $3000; in 1852 to $4000; in 1853 to $7000; in 1854 to $10,000; in 1855 to $12,000; and in 1856 to $16,000. That said Carroll still has in possession nine hundred head of horses, mares, colts and mules, part of said original stock and of its increase, and belonging to the partnership, the total of value of such remaining stock being $81,000. That the sheep and goats had increased to about nine hundred and fifty head, and said Carroll had sold them at the rate of two dollars and a half per head, realizing thereby the total sum of $2,250.

And petitioner further represents that said Carroll refuses to account to and settle with petitioner for his portion of the sales and proceeds of the partnership stock, and also refuses to divide

with petitioner the partnership stock still on hand, as by his said contract he was bound to do. That petitioner had never received from said Carroll any of said stock, except some twenty-one mares, seven mules, and his share of the proceeds of two jacks, received by W. L. Weddington, as agent of petitioner, from said Carroll, in February, 1850. Prayer for judgment against defendant for petitioner's share of the stock on hand, and for some $40,000, besides general relief, &c.

The defendant answered with a general denial, also pleading *non est factum* under oath to the receipt or obligation set up in the petition, the statutes of limitation of two and four years, an account for nearly $3,000, in reconvention, accord and satisfaction, &c.

Having made proof of defendant's signature to the receipt or obligation, substantially described in the petition, plaintiff put that instrument in evidence. On its back was the following (erased) indorsement: "I hereby sign over and transfer my right, title and interest in and to the within receipt to W. L. Weddington, his heirs and assigns. Evansville, (Ark.,) 16th April, 1849.

(Signed)                          "L. EVANS."

The plaintiff proved by Weddington that this transfer was made simply to enable the witness to receive from Carroll stock or proceeds on account of Evans, which was to be applied by Weddington to an indebtedness due him from Evans; that it was not intended as a dissolution of the partnership between Carroll and Evans, nor as an absolute transfer to Weddington of Evans' interest therein; nor was it understood to be such a transfer or dissolution by any of the three parties. That on repeated occasions subsequent to the assignment, Carroll had spoken of the partnership as still subsisting, and acknowledged Evans' interest in the stock.

The evidence was voluminous and contradictory, and in many respects vague and uncertain, particularly with regard to the number of the increase, amount of sales, &c.

The court instructed the jury to return a special verdict in response to specified issues submitted to them in the charge, and among them to find whether the assignment of the receipt or ob-

ligation to Weddington was intended as an absolute transfer of Evans' interest, or only in trust as a security to Weddington for Evans' indebtedness to him.    The 6th instruction was as follows : " If you believe from the evidence in the cause that the partnership agreement aforesaid be genuine, and that Evans had not parted with his share of the partnership to Weddington absolutely, or that he had again become the owner of the same ; and that the matters had not been settled up and closed before the 17th of March, 1857, the date of the institution of this suit; you will then find from the evidence whether his claims were barred by limitation at the date of the institution of this suit.    And upon this you are charged that the transfer made by him to Weddington on the 16th of April, 1849, operated of itself to dissolve the partnership; but that the fact of dissolution of the partnership did not operate to start limitation in favor of Carroll; but, in contemplation of law, Carroll's continuance in the possession of the property was for the benefit of Evans and those who might become the owners of it.    This is a presumption of law which may be rebutted by proof.    In order that the defendant Carroll be enabled to make the plea of limitation available in this case, it devolves on him to show that he intentionally put an end to this presumed friendly possession, that he denied the right of Evans or his assigns to any part of the property in his possession, and held the same in his possession adversely to Evans and his assigns, openly, publicly and unequivocally, and did not recognize or acknowledge the right of Evans or his assigns in the said property.    All these matters he must show to have been continuous for four years before the 17th day of March, 1857, the date of the institution of this suit."

The jury, after having retired to consider of their verdict, returned into court and inquired if they were to consider whether or not the defendant knew the contents of the partnership agreement when he signed it, and thereupon the judge instructed them orally that the question before them was whether the defendant signed it, and not whether he signed it having a knowledge of its contents.    And afterwards the jury returned the second time, and said they could not find from the evidence the amount of sales of

the partnership stock sold by the defendant, nor the number and value thereof in defendant's possession at the commencement of the suit. Whereupon, the judge instructed them orally that they had knowledge as individuals of the value and increase of such stock, and could take into consideration that knowledge in judging of the evidence, in finding their verdict. The defendant excepted to the instructions thus given to the jury.

The jury returned a verdict in favor of the plaintiff on the main issues submitted to them, but found off-sets to the amount of $2,394, under the defendant's plea in reconvention. Whereupon the court rendered judgment for the plaintiff in the sum of $8,180, and half the cost, the defendant recovering the other half of the cost.

The defendant moved for a new trial for various reasons, which motion was overruled. But neither in the motion for a new trial, assignment of errors, or otherwise, was exception taken because the judgment was not in the alternative, for the stock, or on failure to deliver it, for its value.

*T. N. Waul,* and *Hancock & West,* for the appellant.

*Stewart & Mills,* for the appellee.

BELL, J.—We are of opinion that there is no error in the judgment for which it ought to be reversed. The allegations of the amended petition filed March 15, 1859, are very full to the point that the assignment to Weddington was only intended to enable him to collect a debt due to him from Evans, was not an absolute conveyance of the partnership property, and was not so understood or acted on by any of the parties; that Carroll understood the assignment to have been made only for the purpose of satisfying the debt due to Weddington by Evans, and that the partnership between Evans and Carroll continued as well after the so-called assignment to Weddington as before. These allegations are sustained by the evidence of Weddington and by the acknowledgments of Carroll, as late as the year 1855, that the stock was partnership property between himself and Evans.

We are of opinion, however, that the court below took the proper view of the legal effect of the facts proved; that the assignment to Weddington was a dissolution of the partnership between Evans and Carroll, and that Carroll then held the property in trust for himself and Evans, and that limitation would not run against Evans until Carroll renounced the trust and claimed the property as his own against Evans. On almost all the points submitted to the jury, there was conflicting evidence. But we are of opinion that it cannot be maintained that the verdict is not sustained by the testimony. There was evidence of sales of stock, to a greater amount than was found by the verdict, and the jury were warranted, from all the circumstances in proof before them, in finding that it was partnership stock, or stock belonging to Carroll and Evans jointly.

It was alleged in the various petitions, that there was the usual and customary increase of the stock, and the proof was sufficient to show that the stock in the possession of Carrol had increased so as to make the business a very profitable one. Under these circumstances, while a jury ought not to proceed upon mere theories in ascertaining a result, they ought not to be absolutely precluded from adopting some rule of computation, in accordance with the facts proved, by which a result might be attained. It was in the power of Carroll to show what number of stock he had in possession; he might have done this without prejudice, and the question whether they were his individual property, or joint property between himself and Evans, would have remained. Under all the circumstances of the case, we think the verdict of the jury ought to be sustained.

We do not feel at liberty to say that the oral instructions given to the jury, or the remark made to them by the presiding judge, furnishes a sufficient ground for the reversal of the judgment. The judge being unwilling to discharge the jury, in view of the fact that the case was upon trial for the third time, might not improperly suggest to them that a careful consideration of the evidence would enable them to find a verdict, and this was, perhaps, all that was meant by the judge, and all that his remark fairly imported.

We doubt the correctness of the judgment, in that it is for the value of the interest of Evans in the stock. The judgment ought perhaps to have been for the delivery of the stock, or for the value in the alternative of a failure to deliver. But this error, if it be one, is not reached by the assignment of errors, and we do not therefore feel under obligation to reverse the judgment on this ground.

The judgment of the court below is affirmed.

Judgment affirmed.