# F. W. CARTER v. R. J. ROLAND.

## (Case No. 3541.)

1. PARTNERSHIP — DISSOLUTION OF, BY EXECUTION SALE — DAMAGES —
MEASURE OF.— Sale under execution of the interest of one member of a
firm in partnership property, creates a dissolution of the partnership and
makes the purchaser a tenant in common with the remaining member.
The purchaser is not bound to become a partner in the partnership enter-
prise, nor the remaining member to admit the purchaser as a partner;
but if the partner refuses to recognize the purchaser's interest in the
property, the purchaser has a right of action to recover joint possession
and partition, or to sue for damages for conversion; if suit is brought for
conversion, the value of the property at the time of conversion, and legal
interest to recovery, is the measure of damages.

2. PARTNERSHIP PROPERTY — PURCHASE OF, UNDER EXECUTION — MEAS-
URE OF DAMAGES.— The purchaser cannot be made liable for loss in
conducting the business after sale, and is not entitled to share in the
profits; but in a suit by the purchaser for his interest, if judgment is
rendered for the specific property, giving the defendant the privilege of
returning it in satisfaction of the judgment, if the defendant is a wrong-
doer, and the value of the property liable to deterioration if used, the
plaintiff can claim as damages reasonable compensation for the use of
the property, instead of legal interest on its valuation.

3. ATTORNEY AT LAW — COMPROMISE.— The attorney at law of a party
plaintiff has not, by virtue of the relationship, authority to compromise a
monied judgment, and the fact that the plaintiff received possession
of specific property also recovered in the judgment, will not of itself be
such a ratification as will be binding.

4. JUDGMENT — COLLATERAL ATTACK. — While a defendant might, by a
direct proceeding, set aside a judgment showing on its face that the court
fixed the damages on an unliquidated demand, without the intervention
of a jury, his failure to take such proceeding will be considered as a
waiver of his right to a jury, and he not complaining, a stranger in a
collateral proceeding cannot for him.

5. PRACTICE — ASSIGNMENT OF ERRORS.— See errors assigned in such gen-
eral terms as, under the rules of practice, the court will not be required
to pass upon.

6. PRACTICE — DEMURRER.— See case where demurrer to improper issues,
instead of objection to evidence offered under, is the correct practice.

7. REMITTITUR IN SUPREME COURT.— A judgment for five hundred dollars
damages, rents and profits, in a case where legal interest only is the
measure, will, on the appellee remitting all damages in excess of an
amount sufficient to cover legal interest, be reversed and reformed by
the supreme court, and rendered for what it should have been in the
court below.

APPEAL from Bosque. Tried below before the Hon. D. M. Prendergast.

The appellee, Mrs. R. J. Roland, brought this suit against the appellant, F. W. Carter, in the district court of Bosque county, on the 21st day of May, A. D. 1875, to recover a one-half interest in and to one two-flue boiler, one thirty-six inch Coleman corn mill, one thirty-inch breast post flour mill, and one flour belt, together with all the fixtures and appurtenances thereunto belonging, situated in the town of Iredell, Bosque county, and used in running a certain steam mill known as the Ward Keeler Mill, and also half of the revenues and profits derived from running said machinery. In her original and various amended petitions, plaintiff alleged, in substance, that on the 27th day of February, 1875, she was lawfully possessed of and owned one-half interest in said property; that the value of her said interest was one thousand dollars; that one-half of the revenues and profits arising from the use of said property, from the 27th day of February, 1875, were reasonably worth fifty dollars per month, and amounted on the 16th day of January, 1877, to eleven hundred and fifty dollars; and that on the 27th day of February, 1875, the defendant forcibly took from her the possession of all of said property, and continued to hold and use it, refusing to pay her one-half of the revenues and profits. She prayed for the recovery of her interest in said property or its value, with her interest in the revenues and profits.

In his original and various amended answers, defendant pleaded a general denial; title in himself to the property sued for; that the judgment and execution under which plaintiff claimed the property were void, the judgment having been compromised and settled before the execution was issued.

From the statement of facts, it appears that on the 9th day of February, 1874, R. J. Roland recovered judgment against Andrew Downing, J. J. Kilgore and J. N. Jones, in the district court of Bosque county, for the title and possession of certain lots in the town of Valley Mills, in said county, and

for the sum of two hundred and fifty dollars, besides costs of suit. On the 19th day of January, 1875, an execution was issued on this judgment, and on the 29th day of January, 1875, was levied on one-half interest in the machinery in controversy, as the property of Andrew Downing, and was then returned for want of time to sell. On the 13th day of February, 1875, the *venditioni exponas* was issued, and the property was sold on the 27th day of February, 1875, and bought by Mrs. R. J. Roland, to whom the sheriff executed a bill of sale on the 1st day of March, 1875.

At the time of the levy of the execution, Andrew Downing and the defendant, F. W. Carter, were partners; and the machinery in controversy was the property of the firm. The defendant Carter designated one-half interest in the machinery as the property of Downing, and pointed it out to the sheriff to levy on; was present at the sale and did not object to it. After the sale to Mrs. Roland, the defendant Carter told her that he wanted to buy her interest in the mill and would meet her next Monday at Meridian to fix it up. He met her at the time and place designated, but did not buy, for the reason that he wanted more time to study about it. In his testimony Carter denied that he pointed out the property for levy, but did not deny that he proposed to buy Mrs. Roland's interest after the sale to her.

The defendant Carter had possession of the whole property from the time of the sale to Mrs. Roland to the time of the trial, and refused to give her possession of any part thereof, or to account to her for any part of the profits.

Henry Fossett, who was attorney for Mrs. Roland in the suit in which this judgment was rendered, testified for the defendant that soon after the judgment was rendered he saw Downing, one of the defendants, who told him that he had employed counsel to set aside the judgment; and believing that the judgment could be set aside, and in order to settle the litigation, he compromised with Downing, by which compromise Downing was to surrender the property sued for to Mrs.

Roland, and was to pay Fossett fifty dollars. The possession of the lots recovered by the judgment was surrendered by Downing. He paid Fossett fifty dollars, and Fossett gave him a receipt against the judgment.

On the 17th day of February, 1874, Fossett wrote Mrs. Roland that, as she was not at court, rather than continue the case to the next term of court he had compromised it, getting her place back, and Downing paying his fee, fifty dollars; and that the place was at her disposal.

Mrs. Roland testified that she gave Fossett no authority to compromise the judgment, and that she never agreed to any compromise after the judgment; that she did not know that she had recovered a judgment for a considerable time after she received Fossett's letter dated February 17, 1874. She was not at Meridian at the time the judgment was rendered. At the time the judgment was rendered and for some time after she lived at Waco, and was not at Meridian until some time in the fall after the recovery of the judgment. When she came to Meridian, about the time she sued out the execution, under which the property in controversy in this suit was levied upon, she was compelled to employ other counsel to assist her in enforcing her judgment against Downing and others.

The court, after instructing the jury to find for the defendant in case Downing never at any time had any interest in the property, or had disposed of his interest by valid sale to the defendant Carter before the levy of the execution issued on the judgment in favor of Mrs. Roland against Downing and others, or in case the said judgment had been compromised or settled in such manner as to bind the plaintiff before the date of said levy and the sale made by virtue thereof, told them the judgment, execution, order of sale and sheriff's deed were sufficient to pass the interest of Downing in the property to plaintiff, and directed them to inquire and state in their verdict what Downing's interest in the property was, and to find for the plaintiff to the extent of such interest, and also net value (if anything) of the use of such interest from the date of the sale to the time of the trial.

Trial by jury, and verdict that the plaintiff was entitled to one-half interest in the property in controversy, the same being valued at one thousand dollars, and to the sum of five hundred dollars for the years 1875 and 1876, as rents and profits for the use of the property  And the judgment of the court was, that the plaintiff recover of the defendant one-half interest in the property and the sum of five hundred dollars, rents and profits for the use of the property for the years 1875 and 1876, as found by the jury, and the sum of one thousand dollars, the value of the interest of plaintiff in the property, but that the defendant might satisfy the judgment as to the one thousand dollars by surrendering to the plaintiff her interest in the property.  .

The defendant's motion for new trial was overruled, and he appealed, assigning errors as  stated in the opinion of the court.

Appellee entered a remittitur in the supreme court of $365.33 of the $500 found as damages for rents and profits.

*Herring, Anderson & Kelley* for appellant.

*Battle & Maxcy,* and *T. G. Bean* and *D. W. Doom,* for appellee.

BONNER, ASSOCIATE JUSTICE.— The following alleged errors: First, the court erred in its charge to the jury; fourth, the court erred in refusing charges 1 to 7 inclusive, which were asked by defendant; tenth, the court erred in overruling defendant's motion for new trial — are assigned in such general terms as under the rules of practice we are not required, over the objection of appellee, to pass upon them.. Johnson *v.* Alexander, 14 Tex., 386; Earle *v.* Thomas, id., 593; Fisk *v.* Norvell, 15 Tex., 434; Elliott *v.* Mitchel, 28 Tex., 112; Dunson *v.* Payne, 44 Tex., 542; Pearson *v.* Flannagan, 40 Tex., 383; Byrne, Ex'r, *v.* Morris, *supra.*

The third alleged error is, that the court specially erred in charging with reference to the compromise of the judgment

of Roland *v.* Downing *et als.*, in not charging that the plaint-
iff was bound by the compromise if she had accepted the prop-
erty secured by the compromise and taken possession of the
same.

The attorney-at-law of Mrs. Roland did not have, by virtue
of this relationship, authority to compromise the monied judg-
ment against Downing; and the fact that she subsequently,
under the circumstances of this case, received possession of
the specific property recovered also by the judgment, would
not of itself be such a ratification as would bind her.

The fifth alleged error is, that the court erred in admitting
as evidence the original judgment of R. J. Roland *v.* Andrew
Downing *et al.*, as shown by bill of exceptions No. 1, because
said judgment shows on its face that the court fixed the dam-
ages on an unliquidated demand, without the intervention of
a jury.

It does not affirmatively appear that a jury was not impan-
eled, but if it did, this was but an irregularity which would
not render the judgment void in a collateral proceeding.

Although Downing, the defendant in that judgment, might
by a direct proceeding for this purpose have set the same aside,
if in fact no jury had been impaneled, yet as he could have
waived a jury, his failure to take such proceeding would be
considered as such waiver. As he himself did not complain,
a stranger could not for him.

The sixth alleged error is, that the court erred in admitting
as evidence the original execution in said cause, as shown by
bill of exceptions No. 2.

We think that, by a fair construction of the terms of the
levy, this objection is not sustained by the record.

If, however, it be admitted that Carter, a stranger to that
proceeding, could call it collaterally in question, then the ob-
jection was obviated by the return upon the *venditioni expo-
nas*, under which the property was sold.

The eighth alleged error is virtually disposed of in the con-
sideration of the last two preceding.

35

The ninth alleged error is, that the court erred in rendering judgment for fifteen hundred dollars and costs of suit, because the jury find the net value of the use of the one-half interest of the property five hundred dollars, and the value of the whole property one thousand dollars, and not the value of the one-half interest at one thousand dollars.

Whatever may be the strict grammatical construction of that part of the verdict which estimates the value of the property, yet we are of opinion that when read in the light of the charge of the court, the jury intended to place the estimate of one thousand dollars upon the half interest found for Mrs. Roland.

In the last clause of the charge the jury are instructed that, should they find for the plaintiff, they will state in a special verdict the value of the interest of the plaintiff in the property sued for.

The verdict was as follows: "We, the jury, find for the plaintiff, that the plaintiff is entitled to one-half interest in the following described property, to wit: One two-flue boiler, one thirty-inch Coleman corn mill, one thirty-inch breast flouring mill, and one flouring belt, together with all the fixtures and appurtenances belonging to the same, in the town of Iredell, Bosque county, Texas, the same being valued at one thousand dollars.              A. J. GEORGE, Foreman.

"We, the jury, find that the plaintiff is entitled to the sum of five hundred dollars for the years 1875 and 1876, as rents and profits for the use of the above named machinery.

"A. J. GEORGE, Foreman."

Thus considered, we are of opinion that the part of the first special verdict between the words "to wit" and "Texas," inclusive, are but descriptive of the property, in which they find for Mrs. Roland a half interest, and that they intended to estimate her interest at one thousand dollars, and not to place this valuation on the whole of the property.

The second and seventh assigned errors present the most material question in the case, and will be considered together.

*Second.* The court erred specially in charging the jury, that you will also find for the plaintiff the net value (if anything)· of the use of such interest from the date of the sale by the sheriff up to the present time (the court meaning by the term interest, interest in the property sued for), and that they, the jury, could find this net value of the use of the property, together with the value of plaintiff's interest in the property.

*Seventh.* The court erred in permitting testimony of witness J. W. McCulloch to go before jury, as shown by bill of exceptions No. 3.

It is insisted on behalf of appellant, Carter, that the only measure of damages for which he could be responsible would be the value of Mrs. Roland's interest in the property, and legal interest thereupon.

Mrs. Roland's suit seems to have been instituted and prosecuted upon the supposition that, by virtue of being, a purchaser of Downing's half interest in the partnership property of Carter & Downing, she became a partner with Carter, and was also entitled to half the profits.

The court charged the jury that her measure of damages was the value of the use of her interest in the property.

Mrs. Roland introduced the witness McCulloch, whose testimony was objected to, tending to prove the value of the profits made by Carter. And the jury, under the pleadings and evidence, returned a verdict for her for five hundred dollars, " rents and profits."

The purchase of Downing's interest in the partnership property of Carter & Downing by Mrs. Roland, created a dissolution of that partnership and made her a tenant in common with Carter. She was not bound to become a partner, and Carter was not bound to admit her as such. Story on Part., §§ 311, 312; Collyer on Part., § 112.

If Carter subsequently refused to recognize her interest in the property, but held the same adversely, she had her right of action to recover possession jointly with him; in which event she would be entitled to partition in this or a subse-

quent proceeding; or she might simply sue for damages for conversion.

As Mrs. Roland's time, skill and services were not employed in the business, she should not participate in the profits, if any; and it would not be contended, under the circumstances, had there been loss and not profit, that she would be liable for the same.

On the other hand, as under the terms of the judgment Carter had the election to return the specific property instead of paying its valuation, and as the machinery was of a character which had a peculiar value from ordinary property, because adapted to a particular kind of skilled labor, and if used its value might thereby be deteriorated, then Mrs. Roland, as against Carter, if a wrongdoer, could claim as damages reasonable compensation for the use of the property instead of legal interest on its valuation.

This in principle is the doctrine of Pridgin *v*. Strickland, 8 Tex., 427; also Ewing *v*. Blount, 20 Ala. (N. S.), 697.

The charge of the learned judge presiding was in accord with this view of the law.

The plaintiff in her pleadings, however, claimed rents and profits as damages, and the testimony of the witness McCulloch, which was objected to, and that of other witnesses, was to this point, and the verdict shows affirmatively that the jury found as damages " rents and profits."

As tending to support this verdict, which was contrary to the law and the charge of the court, there was error in permitting the testimony of the witness McCulloch to go to the jury.

It is proper to remark that the correct practice is to raise such questions by demurrer and not by objection to the testimony.     In this way the point is sharply made for revision by the appellate court, the proper issues are defined, so that the testimony can be introduced accordingly; the delay and possible error of the court in passing upon the introduction of the evidence, and the probable error of the jury in basing their

verdict upon an improper issue, are avoided.    Powers *v.* Caldwell, 25 Tex., 352; Williams *v.* Bailes, 9 Tex., 62.

There are separate verdicts, showing the valuation of the property and the amount of damages as rents and profits. The plaintiff, in any event, under the verdict should be entitled to as much as legal interest upon the value of the property, but there is no date fixed by the record from which this interest can be calculated except the date of the institution of the suit.

Under the authority of Bracken *v.* Neill, 15 Tex., 115, and Hunt *v.* Reilley, 50 Tex., 105, if the appellee, Mrs. Roland, will remit as of the date of the judgment, from the $500 found by the verdict as damages for rents and profits, the difference between that amount and legal interest upon $1,000, the value of the property, to be calculated to the date of the judgment from the time of the institution of the suit, then the judgment will be reformed accordingly, she to be taxed with the costs in this behalf expended, otherwise the judgment will be reversed.

[Opinion delivered June 11, 1880.]

The remittitur having been filed in this case, the judgment below is reversed and reformed in accordance with the above opinion.

REVERSED AND REFORMED.