**R. G. PARKER, Independent Executor,
Appellant,**

v.

**Paul DONALD et al., Appellees.**

No. 4462.

Court of Civil Appeals of Texas,
Eastland.

Feb. 4, 1972.

Rehearing Denied March 3, 1972.

Kirk Kuykendall, Kuykendall & Kuykendall, Austin, for appellant.

Jack Connell, Bowie, Clayton S. Kramer, Wichita Falls, Vinson, Elkins, Searls & Connally, Houston, Boyd Barjenbruch, Bowie, for appellees.

COLLINGS, Justice.

R. G. Parker as Independent Executor of the estate of Dixie Donald, deceased, brought suit against Paul Donald, Robert C. Donald, Sr., Montague Cattle Company, a Texas corporation, and Agricultural Livestock Finance Corporation, a Texas corporation, seeking to establish his interest as the personal representative of the estate of Dixie Donald in certain properties alleged to have been formerly owned by the dissolved partnership between Paul Donald and J. M. Donald and certain properties owned by Robert C. Donald, Sr. All parties, plaintiff and defendant, filed motions for summary judgment. The court granted the motions filed by each of the defendants and R. G. Parker, the Independent Executor, has appealed.

Appellant Parker alleged in his first amended original petition that he is the Independent Executor of the estate of Dixie Donald, deceased; that Dixie Donald was married to Paul Donald on September 19, 1961; that she died testate on June 17, 1966 and her will, leaving all of her estate to her children, was admitted to probate; that appellant Parker on July 25, 1967, obtained a default judgment against Paul Donald which vested in him as executor an undivided one-half interest in all "effects" held by Dixie Donald or Paul Donald or both at her death on June 17, 1966, and an undivided one-half interest in all real estate acquired by her or him or both during the period from September 19, 1961, and June 17, 1966; that Robert C. Donald, Sr. is a son of Paul Donald; that on July 25, 1966, an entity known as Donald and Son acting by and through Paul Donald and Robert C. Donald, Sr. executed a note to the Agricultural Livestock Finance Corporation for the sum of $450,000 and secured it by a deed of trust covering lands situated in Montague County and by a deed of trust covering land situated in Cooke County; that the lands securing the indebtedness were acquired by Paul Donald and J. M. Donald as partnership property or acquired by Paul Donald and Robert C. Donald, Sr. after September 1, 1961.

It is undisputed that Paul Donald and his brother J. M. Donald were for many years partners in the law business, and that during this time they acquired much real estate in Montague County and elsewhere. Paul Donald and J. M. Donald ceased doing business as partners in 1959 and J. M. Donald sold his undivided one-half interest in the land involved to Montague Cattle Company in March of 1960. There were no debts of Donald and Donald at the time Montague Cattle Company bought J. M. Donald's interest in the land except current expenses, salary and perhaps a small amount for office supplies, and mortgage notes on the land and on some cattle. Pursuant to the sales contract between Montague Cattle Company and J. M. Donald, Montague Cattle Company assumed J. M. Donald's share of the debts against the real properties. Paul Donald retained his undisputed one-half interest in the properties formerly owned jointly with J. M. Donald. Paul Donald's first wife died in November of 1960, and it is undisputed that Dixie Donald was married to Paul Donald on September 19, 1961. Dixie Donald died on June 17, 1966, and this suit was filed in May of 1970.

Appellant contends the evidence shows that between Paul Donald and Montague Cattle Company, hereinafter referred to as Montague, there had been no liquidation of assets, no payment of liabilities, or agreement as to the status of capital accounts or division of proceeds or surplus prior to the date of Dixie Donald's death on June 17, 1966. Appellant contends that the court erred in holding, in effect, that the partnership of Donald and Donald had terminated prior to the death of Dixie Donald

and that as a matter of law her Independent Executor Parker held no interest in the partnership assets. Appellant further contends that since his allegation was that he, Montague and Paul Donald occupied the capacities of partners and/or assignees of partners, which allegation was not denied under oath by Montague as required by Rule 93(f), the court erred in holding that such capacities were not held by the partners and erred in granting Montague's motion for summary judgment. Appellant further contends that the court erred in granting Paul Donald's motion for summary judgment and Montague's motion for summary judgment because there are material issues of fact to be decided in connection therewith.

Appellees contend that the court properly found and held as a matter of law that the Donald and Donald partnership had not only dissolved but had terminated long before the death of Dixie Donald. They assert that the Donald and Donald law partnership was dissolved in 1959 and that Paul and June Donald thereafter owned the realty as cotenants. Montague asserts that it thereafter bought J. M. Donald's undivided interest in specific property formerly a part of the partnership and assumed his undivided share of certain specified obligations; that at this point Montague and Paul Donald were cotenants and each owned an undivided interest in certain specific property; that Montague did not buy any portion of J. M. Donald's interest in "partnership property". Montague further asserts that the evidence shows that it proceeded to pay off that portion of each joint obligation which it had agreed to discharge and that Paul Donald was also paying off his share of such obligations; that there was never any disagreement between Montague and Paul Donald over the portion that each owed on the debts for which each was liable; that Montague did sue Paul Donald for a partition and accounting, but sought such partition and accounting as a cotenant and not as a partner; that Montague did not seek an accounting of anything occurring before the Donalds dissolved their partnership, or anything occurring between the dissolution of the Donald and Donald partnership and the date of Montague's purchase.

■ We overrule appellant's point No. 1 contending that the court erred in denying his motion for summary judgment because appellant asserts that as a matter of law he was entitled to the relief sought by him against Paul Donald and Montague Cattle Company. To be entitled to the summary judgment as pleaded by appellant, he had the burden of showing conclusively that the Donald & Donald partnership had not terminated but continued in existence between 1959 and 1966; that limitation had not run on his cause of action for a partnership, accounting and for a share in the profits of the partnership, and further that there was some surplus and profits from the partnership. Appellant failed to establish the existence of these facts.

We also overrule appellant's points No. 2 and No. 3 contending that the court erred in granting the motions for summary judgment of Paul Donald and Montague Cattle Company because, appellant asserts, material fact issues existed concerning appellees' right to a judgment. The record is undisputed that the partnership between Donald & Donald ceased to operate as such in 1959, and that at such time the partnership owned many pieces of real estate in Montague County and elsewhere. It is also undisputed that thereafter in August of 1959 Montague Cattle Company contracted to buy certain properties formerly belonging to the partnership from J. M. Donald, and that on March 12, 1960, J. M. Donald executed a deed covering his interest in such properties to Montague. The deed recited a conveyance of:

"All right, title, claim and interest of grantor as of September 30, 1959, in and to all real estate, interest in real estate of every character and description, in any and every county in the state of Texas . . ."

The deed specified certain exceptions to the conveyance of J. M. Donald's property. One of appellant's contentions that the partnership had not terminated at the time of Dixie Donald's death was his claim that at that time there had been no liquidation of assets or division of profits or surplus of the partnership.

In our opinion appellant's entire case rests upon the erroneous assumption that the Texas Uniform Partnership Act, Vernon's Ann.Tex.Civ.St., Article 6132b, is applicable to the partnership here involved. Sec. 30 of the Act which is relied upon by appellant provides:

"Sec. 30. On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

The Texas Uniform Partnership Act became effective on January 1, 1962, which was after the termination of the partnership here involved in 1959 and 1960. Section 4(5) of the partnership act states that such act "shall not be construed so as to impair the obligations of any contract existing when the Act goes into effect, nor to affect . . . right accrued before this Act takes effect."

The undisputed facts show that the dissolution of the partnership in this case occurred under the common law of Texas which was in effect before the date of enactment of the Texas Uniform Partnership Act. Under the Texas common law a partnership could be dissolved by agreement of the partners or by operation of law where one partner transfers or assigns his interest in the partnership to a third party. 44 Tex.Jur.2d 369, Sec. 43; Willis v. Satterfield, 85 Tex. 301, 20 S.W. 155 (1892); Kelly v. Kelly, 411 S.W.2d 953 (Tex.Civ. App., 1967 ref. N.R.E.).

At the time of the termination of the partnership between the Donalds by the transfer of J. M. Donald's interest in the properties to Montague Cattle Company, Paul Donald and Montague became owners of the property individually, the relative interest of each being measured by the amount which might be due each on an accounting after debts and equities were settled. Thus each party held his share in the property in severalty. Diversified Fruit Farms v. Johnson, 58 S.W.2d 73 (Tex.Com. App.1933). In 44 Tex.Jur.2d at page 515 in discussing the transfer of an interest in partnership property under common law principles, it is stated that:

"Since a partner has the right to an undivided interest in the firm assets after payment of debts and settlement, a sale of an undivided part of all firm property by consent of the copartner works a dissolution of the firm and converts the property right into mere joint ownership;"

It is further stated on page 516 of the text that an assignment or transfer by one partner of his share or interest to a third person works a dissolution of the firm though that result was not intended. See also Carroll v. Evans, 27 Tex. 262 (1863). It is stated that a sale of a partner's interest on execution dissolves the firm and makes the purchaser a joint owner of assets with other partners. Also see Carter v. Roland, 53 Tex. 540 (1888); Jones v. Meyer Bros. Drug Co., 25 Tex.Civ.App. 234, 61 S.W. 553 (1901 ref.).

The record is undisputed that at the time of the sale of J. M. Donald's interest in the specified property to Montague on March 12, 1960, that Montague paid off each joint obligation which it had agreed to discharge and that Paul Donald also was paying off his share of such obligations, and that Paul Donald and Montague were in agreement concerning the debts for which each was liable. Under these undisputed facts we hold that thereafter under the common law of Texas which was controlling, Paul Donald and Montague owned the property as cotenants and not as partners.

It was alleged in appellant's pleadings that ". . . he and Montague Cattle Company occupied the position of assignees of the partnership of Donald and Donald, and that each is entitled to receive his assignor's interest as follows: Montague is entitled to that share of profits and surplus which J. M. Donald would have been entitled and R. G. Parker, in his representative capacity, is entitled to whatever profits and surplus Paul Donald was entitled." In appellant's point five it is contended that since appellant's allegation was that he, Montague and Paul Donald, occupied the position and capacity of partners and assignees of partners and since such allegation was not denied under oath by Montague as required by Rule 93(f) V.A.T.C.S. the court erred in holding that such capacities were not held by the parties, and erred in granting Montague's motion for summary judgment. This point is overruled. Appellant Parker did not plead a partnership between Montague and Paul Donald. His pleading was that they occupied the position of "assignees of partners". Rule 93 does not require a sworn denial of the allegation of assignments from partners.

As heretofore noted we hold that after Montague Cattle Company's acquisition of J. M. Donald's interest in the real properties specified therein, Paul Donald and J. M. Donald, and/or Montague were not partners, but were joint owners of the properties. It is shown that the rents and royalties from these properties were paid into a joint account between Paul Donald and Montague from which taxes and other expenses were paid. However, Paul Donald and J. M. Donald no longer engaged in joint business operations and the parties did not conduct themselves as partners. The record further shows that in February of 1968 Paul Donald and Montague partitioned the surface rights in the ownership of the jointly owned properties and that each retained his undivided interest in the minerals.

In July of 1966 Paul Donald and Robert C. Donald, Sr. executed and delivered to appellee Agricultural Livestock Finance Corporation a promissory note in the principal sum of $450,000.00. The note was secured by two deeds of trust on real estate in Montague and Cooke counties. The record title to such mortgaged properties was in the names of either Paul Donald, Robert Donald, Sr. or Paul Donald and Robert Donald, Sr. The record title reflected that these properties were: (1) owned by Paul Donald prior to 1961, (2) owned by Robert Donald, Sr., or (3) were purchased by Paul Donald and Robert Donald, Sr. subject to vendor's liens securing the purchase price of the properties, which liens were assigned to and held by Agricultural Livestock Finance Corporation. On June 24, 1968 the above note, reduced to the principal sum of $397,496.48 was renewed, and secured by renewal deeds of trust on properties in Cooke and Montague Counties. The lands included in the 1968 deeds of trust were also set out in the deeds of trust executed in favor of appellee Agricultural Livestock Finance Corporation in 1966. However the 1968 deeds of trust included only Paul Donald's interest in the properties partitioned to him in February of 1968 by agreement with Montague Cattle Company, whereas the 1966 deeds of trust included Paul Donald's undivided interest in and to all of the properties jointly held by Paul Donald and Montague Cattle Company.

Appellant based his claim against all the appellees upon the default judgment rendered in 1967 in Cause No. 15,127 in the District Court of Montague County entitled R. G. Parker v. Paul Donald which awarded appellant "an undivided one-half interest in all effects of Paul Donald and/or Dixie Donald which were in the possession of either or both of them on June 17, 1966". As applied to appellee Agricultural Livestock Finance Corporation appellant invoked the 1967 judgment to invalidate the liens conveyed to Agricultural

Livestock Finance Corporation in 1966 and 1968 hereinabove described, contending that the partnership between Paul Donald and J. M. Donald continued, and that the judgment covering "effects" awarded appellant an interest in the partnership land.

Appellant's contention that the word "effects" as used in the judgment includes Paul Donald's interest in the partnership with J. M. Donald is based upon Article 23, § 17 setting out the general definitions for Vernon's Annotated Texas Civil Statutes, which states " 'effects' includes all personal property and all interest therein" and Section 26, Article 6132b of the Texas Uniform Partnership Act, which provides that a partner's interest in the partnership is personal property for all purposes. It is questionable whether the definitions as above set out have any relevance to the construction of terms contained in a judgment of a court. Article 23 is one of the general provisions of the Texas Civil Statutes and in our opinion applies only to the construction of words as used in the statutes. The question presented in this case involves the construction of the word "effects" as used in a judicial decision and Article 23 has no relevance thereto.

In addition, it is noted that Article 23 expressly qualifies the application of the definitions contained therein and states that: "The following meaning shall be given to each of the following words, unless a different meaning is apparent from the context." It is apparent from the context that the meaning of the term "effects" contained in the judgment differs from the statutory meaning. The term "effects" as used in this context extends only to material or physical items possessed by Paul or Dixie Donald at the time of her death. Thus the judgment awarding appellant an interest in those "effects" in the "possession" of Paul or Dixie Donald obviously could not include the intangible, non-corporeal interest of Paul Donald in the alleged partnership between J. M. Donald and Paul Donald.

It should be noted that the claim of the wife's representative in the instant case is not for rents or revenues from Paul Donald's separate property earned during marriage, which would be community property, but rather for his interest in the partnership, that is, his share of the partnership profits and surplus. The partnership in question terminated when Montague purchased the specified real property from J. M. Donald in 1960. Paul Donald had no partnership interest after that time, and specifically had no interest therein when Dixie Donald married Paul Donald on September 19, 1961 or thereafter until the time of her death. Paul Donald's interest in the former partnership property thereafter became his separate property. We cannot agree with appellant's contention that the 1967 judgment awarding appellant an interest in those "effects" in the "possession" of Paul or Dixie Donald included Paul's interest in the partnership.

In appellant's sixth point it is contended that the court erred in granting the motion for summary judgment filed by Agricultural Livestock Finance Corporation because appellant asserts that questions of fact existed. In our opinion this point is not well taken. When the alleged questions of fact asserted by appellant are examined, it is our opinion that there is no dispute as to any genuine issue of material fact that would prevent summary judgment being issued in favor of Agricultural Livestock Finance Corporation.

■ Appellant's first contention is that "the status of lands" covered by appellees' deed of trust presents an unresolved fact issue. The undisputed evidence shows that all of the properties in the name of Paul Donald were owned by him prior to his marriage to Dixie Donald in 1961 except one tract of land, that is, a 128.7 acre tract acquired by Paul and Robert C. Donald in 1964. The 1964 debt supported by a lien on the 128.7 acre tract is presumptively a community obligation and Paul Donald was authorized to mortgage that tract to secure the community debt in 1966, and after ap-

pellant's qualification as Administrator of Dixie Donald's Estate had further authority to execute the 1968 renewal deed of trust. Except for the 128.7 acre tract it is undisputed that all of the remaining part of Paul Donald's land at the time in question was his separate property. Appellant contends that there was a question of fact as to whether the debt to Agricultural Livestock Finance Corporation was a community debt or the separate indebtedness of Paul Donald. This question is immaterial upon the existence of such question except because the judgment herein was not based as to the 128.7 acre tract. Appellant's third contention as to the existence of an unresolved question of fact is whether the doctrine of marshaling of assets should be invoked by the court. This question could only be relevant if it should be found that appellee Agricultural Corporation does not have a valid lien on Paul Donald's property. We find to the contrary, as a matter of law, and such alleged issue of fact is therefore not material. Appellant's fourth contention as to the existence of a question of fact is that there is a question as to whether or not the lien held by the finance company was superior to plaintiff's interest in the real estate. This alleged question of fact involves a legal question which has heretofore been decided. The undisputed evidence shows that all of the properties in the name of Paul Donald were owned by him prior to his marriage to Dixie Donald in 1961 except the 128.7 acre tract; that such land was therefore Paul Donald's separate property, and that he had a right to execute a lien thereon. Appellant does not seriously argue his sixth point in which it is contended that there was a question of fact as to whether the debt owed by Paul Donald was a claim against the estate of Dixie Donald, and if so whether or not the debt was barred by limitations. In our opinion appellees' contentions concerning the nonexistence of questions of fact which would entitle the Agricultural Livestock Finance Corporation to a summary judgment are well taken and the summary judgment was properly granted.

■ In appellant's seventh point it is contended that the court erred in granting the motion for summary judgment filed by Robert C. Donald, Sr. and Paul Donald's motion insofar as it related to Robert C. Donald, because appellant contends that the summary judgment evidence raised fact issues concerning whether Paul Donald and Robert C. Donald, Sr. had acquired land in which R. G. Parker held an interest, and that Robert C. Donald, Sr. held the legal title to land in which R. G. Parker owned an interest. Appellee Agricultural Livestock Finance Corporation asserts that the court did not commit error in granting such motions for summary judgment.

The record shows that Robert C. Donald never acquired the legal title to the lands in question, specifically the 128.7 acres, but only held the equity of redemption therein because the seller in each case reserved a vendor's lien against said property representing purchase money due and owing. These facts show that Robert C. Donald, Sr. had not acquired legal title to such lands but had acquired only the equity of redemption therein which they were not financially able to exercise, and that by reason thereof they lost the land. The record further shows that Parker never offered or attempted to pay any of the purchase price of such land. He stands charged with notice of all the provisions of the deeds, vendor's liens and deeds of trust affecting the title to such lands. We hold as a matter of law that Robert C. Donald, Sr. did not hold the legal title to the property in question for the benefit of his father, Paul Donald, or that Robert C. Donald, Sr. and Paul Donald acquired the property together. The court did not commit error in granting Robert C. Donald's motion for summary judgment.

The judgment of the trial court is in all things affirmed.