JAMES McMILLER v. ANTHONY BUTLER'S ADMINISTRATRIX.

A sale of land under execution, made after the death of the defendant in execution, is invalid, although the levy may have been made before such death; and in this case such sale was set aside at the suit of the legal representative of the defendant in execution, commenced nearly five years after the sale, the plaintiff offering to restore the price, with interest.

It would seem that the levy of an execution on land in a county other than that in which the judgment is rendered, during the lifetime of the defendant in execution, creates a lien which, if not lost by laches, will be enforced in the Probate Court, under the Act of 1848, after the defendant's decease. (Hart. Dig. Art. 1168.)

Error from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit, March 11th, 1854, by Anthony Butler's Administratrix against James McMiller, to recover a tract of 400 acres of land. Defendant claimed the land by purchase at Sheriff sale as the property of said Butler; and in case he could not retain the land, he prayed a recovery of the price paid by him for it. The levy was made in March, 1849; Butler died in April; and the land was sold in May. The death of Butler was not known in the county where the sale took place, until after the sale. A jury being waived, and the plaintiff agreeing to repay the price

($500,) paid by the defendant for the land, with interest, the Court gave judgment for plaintiff for the land, suspending the execution until the payment to defendant of the price paid by him, with interest. The judgment on which the land was sold was in Washington county, and the land in Grimes. This defendant was not a party to said judgment.

*Sayles*, for plaintiff in error. At Common Law the sale would be good. (Bac. Ab. title EXECUTION.) In Conkrite v. Hart, (10 Tex. R. 140,) the levy was not made until after the death of the defendant. That case was governed by the provisions of the Act of 1846; this by the Act of 1848. By the latter, the Common Law is expressly applied to the settlement of estates of deceased persons. (Hart. Dig. Art. 1244.)

It might well be said that the rule of Common Law was inconsistent with the Act of 1846, which postponed the payment of all debts of every class for twelve months, and which did not authorize a creditor, having a specific lien, to enforce that lien in any case. But it certainly is not in any way inconsistent with the provisions of the Act of 1848, which gives to the creditor with a specific lien, a prompt, sufficient remedy; which authorizes him to proceed at the first Term of the Court after the death of his debtor to sell the specific property for cash. Why suspend the execution issued and levied in the lifetime of the party, declare it void, and the title of a purchaser without notice and for a valuable consideration a nullity, when that identical property could have been sold 30 days afterwards for the same purposes (to pay this identical debt,) under the order of the Probate Court?

As a question of policy the sale should be sustained. This Court, by a train of decisions, have settled the law so as to protect purchasers at Sheriffs' sales. Here the sale was conducted fairly; the land was duly advertised; it was sold for its full appraised value; the purchase money was paid and applied to the extinguishment of the debt; no creditor or person having a privileged claim is complaining, but the administratrix brings suit after nearly five years. The land is now probably enhanced in value. The statement of the suit and its speculative character would of itself be sufficient to deny her the relief she claims.

*J. C. & D. C. Giddings*, for defendant in error. If the plaintiffs had a valid levy upon the land in controversy, before

the death of the defendant, he had thereby acquired a lien which he could enforce in the Probate Court, and in no other Court or manner. (Hart. Dig. Art. 1095, 6, 7, 8, 1101, 1168; 1 Tex. R. 544; 2 Id. 456; 10 Id. 140; 16 Id. 472.)

HEMPHILL, CH. J.   Was the sale, under which the plaintiff in error sets up title, void in consequence of the death of Anthony Butler, the defendant in execution, before the day of sale?

This can scarcely be considered an open question in this Court.

At Common Law, an execution which had issued prior to the death of the defendant might have been enforced by levy and sale after his death.   This proceeded on the theory and fiction, that an execution, when issued, was a perfect thing, with certain functions; and, being complete in itself, could not be superseded by the death of plaintiff or defendant, or of both, but must be performed according to its mandate.   (Bacon, Abdt. title EXE-CUTION; Sellon's Prac. same title; Bennett v. Gamble, 1 Tex. R. 132, 133; 4 Howard, U. S. R. 75.)

This theory has a flimsy show of consistency; but its operation is disastrous to the interests of creditors and heirs.   Under the laws of many of the States, debts, as in our system, are to be paid in a certain order of preference.   But forced sales under executions, whether they be against the deceased or against his executor or administrator, must not only sacrifice the property, leaving many of the debts unpaid, but sweep it into the hands of the most eager and diligent, without much regard to legal priority, or that cardinal principle of equal justice, that debts should be paid in the due course of administration.

This theory has no place in the Probate Code of this State. The act of Providence which removes the defendant beyond the jurisdiction of earthly Courts, releases his property from the active operation of mortgages, executions or other liens, and transfers his estate, with its claims and liabilities, to a jurisdiction specially organized for the settlement of the estates of the deceased.   Judgments are not the first in the order of preferred debts against an estate.   The expenses of the last sickness, of administration, and the allowance to the widow and children, must be first paid.   It could not for a moment be admitted that executions against the deceased should absorb the entire estate, leaving nothing for the widow and children, or the expenses of the funeral and the last sickness.   The statute intended these to have a substantial pre-

ference. But if an execution be an entire thing, not to be super-seded, its course must often sweep away these rights, and give to the creditor what was intended for the widow and the orphan. An execution creditor is not without remedy; for by the Act of 1848 he may, by special process from the County Court, have a sale of the property subject to the lien. (Hart. Dig. Art. 1168.) This order may be obtained at any regular Term of the County Court; and if taken at the first Term after administration, it may not be long after the death of the deceased. But there is a wide difference between a sale under an ordinary execution, a few days after the death of the defendant, (as was the fact in this case,) and a sale under an order from the County Court. The former may be had before the appointment of an adminis-trator; the latter must be after such appointment, and, of course, after the estate has the benefit of the aid, counsel and manage-ment of a responsible trustee. The sale under the former must be for cash; under the latter it may be on credit, or on such terms as the Chief Justice shall direct. (Art. 1171.) Under the former the sale is binding; under the latter it must be reported to the Court, and may be set aside, if not fairly made, and a new one ordered. (Art. 1176.) Under the former the proceeds of the sale would go to the plaintiff in execution; under the latter they would be applied first to the payment of such claims as had a preference over the judgment, and the balance only would be paid to the plaintiff. (Art. 1190.)

The sale of property of an estate, by the Sheriff, under an or-dinary execution, would derange the entire system for the settle-ment of successions, and surrender to the grasping that which, by judicious management under the provisions of the law, might suffice for the discharge of all debts, and leave a surplus for the benefit of the heirs.

But, as previously said, this cannot be regarded as an open question. In Conkrite v. Hart & Co. (10 Tex. R. 140) it was held that a sale under execution issued in the lifetime of the debtor, but levied after his death, was void. The fact that the execution was levied after the death was unimportant. The judg-ment in that case had a lien without the levy; and the opinion is, in substance, that the Common Law on the subject of liens was abrogated by the Probate Law of 1846, and that judgment liens were to be enforced through the Probate Court, and not by execution. The statute of 1848 furnishes much stronger and more decisive evidence than that of 1846, that mortgage and

other liens should be enforced only through the process of the County Court.

The decision in Conkrite v. Hart & Co. has, in effect, been affirmed by Robertson v. Paul, (16 Tex. R. 472;) Boggess & Peck v. Lilly, decided at Austin, 1856, (18 Tex. R. 200;) and by Chandler v. N. W. Burditt, at this Term. In the latter case the levy was before the death of the defendant, and application for a writ of *venditioni exponas* after his death was refused by the District Court, and the judgment was affirmed by this Court.

Judgment affirmed.