## MOORE, MCKINNEY & CO. v. J. F. KING.

### No. 414.

1. **Measure of Damages in Trover and Conversion.** — Verdict for value of wagon and its hire from caption to day of trial affirmed. The trespass was committed January 4, and judgment was rendered February 26, 1892. The testimony showed that the wagon was worth $70, and its hire about 75 cents a day. Judgment for $100 actual damages sustained.

2. **Same.**—While the value of the property taken, with interest from the day of its seizure, is the generally recognized measure of damages, yet the rule is not inflexible. Where interest is manifestly an inadequate compensation for the loss of the use of the thing taken, then the value of its use or hire up to suit or judgment, if suit be not improperly delayed, may be regarded as a just compensation to the owner for his loss; and he may recover value and hire of the property taken in such case.

APPEAL from the County Court of McCulloch. Tried below before Hon. G. L. BEATTY, County Judge.

*F. A. Newman*, for appellants. — The measure of damages for illegal conversion of personal property is the market value of the property at the time and place of conversion, with legal interest from time of conver-

sion; and there are no circumstances in this case that would change the general rule.

No brief for appellee reached the Reporter.

FISHER, CHIEF JUSTICE.—We have carefully considered all the questions presented by the various assignments of error, and conclude that there is no error in the judgment of the court below, and it is therefore affirmed.

There is one question presented in the record that we deem important to discuss. The action is for damages for the wrongful conversion of a wagon, the property of the appellee. The jury, by their verdict, found $100 as actual damages.

In addition to an item of exemplary damages, the petition laid the claim for actual damages at the value of the wagon and its use up to the time of trial. The finding of the jury eliminates any question of exemplary damages.

The court below instructed the jury, upon the issue as to actual damages, that they may consider the value of the wagon at the time of its conversion, together with the reasonable value of its use for the time so converted.

The conversion in this case was complete; there was no return or recapture of the converted property.

In arriving at the amount of the verdict, the jury evidently considered the value of the use of the wagon, as the evidence shows that it was only worth about $60 or $70 at the time of the conversion.

The assignment of error questions the charge of the court in authorizing the jury to consider the value of the use of the wagon as a part of the damages that the plaintiff may recover. This is the question that we propose to discuss.

It is an axiom of the law, that a party injured is entitled to damages commensurate with the injury sustained. The exceptions to this rule exist in those cases of damnum absque injuria, and when a state of facts exist that entitle the injured party to exemplary damages. The damages recoverable must be either the necessary result of the act complained of, or that arise as the natural and probable consequences of the particular act or acts that occasion the harmful results. And in ascertaining the result of these acts, the purpose of the law is to give exact compensation for those consequences that are traceable as the necessary, natural, or probable fruits of the wrongful act. In applying these principles of law to the given case, the courts should not be bound by an inflexible and unvarying rule as to the measure of damages, that should apply alike in all cases; but keeping in view the just principle of compensation, the measure of damages should be adjusted to the facts of the particular case,

so that the trespasser and tort feasor will be held responsible, not only for the necessary result, but the natural and probable consequences of his act.    Full indemnity for the injury sustained is what the law exacts. Hence it is difficult and unwise to attempt to lay down a rule of damages that should apply alike to all cases of trover or conversion.    The general formula as to the measure of damages prescribed by the books in actions of conversion, where the conversion is complete, is the value of the property converted, with legal interest from the time of the conversion.    In applying this measure of damages, some of the courts differ as to when the value is to be determined; some holding that it is to be ascertained at the time of conversion, and others holding that the trespasser shall be charged with the highest value shown to exist between the time of conversion and the trial, provided the action is prosecuted with reasonable diligence.

The rule quoted may be the general rule, but it by no means follows that it is an inflexible rule, and should be applied in all actions of conversion.

As said by Justice Nott, in Hatton v. Banks, 1 Nott & McCord, 223: "Damages for detention may be given according to the nature of the thing converted.    The defendant is not to be benefited by his own wrong."

The general rule may find application in a great variety of cases, but we do not think it is inflexible.    It has, like all rules, exceptions that are as important to be observed as the rule itself.    The theory upon which the general rule rests is, that the value of the property converted is equal to the property itself, and the interest on that value is the legal damages for withholding it.    The justification of this rule, if applied alike to all property converted, may find support in a legal fiction; but as a matter of fact, an application of the rule in a great variety of cases of conversion would practically deny the owner just compensation, and would relieve the trespasser, to some extent, of the natural and probable consequences of his wrongful act, and permit him to reap a profit from his wrongdoing at the expense of the owner.

As aptly said by Justice Warner, in the case of Schley v. Lyon, 6 Georgia, 534:    "The principle on which the courts proceed in awarding damages in actions for trover is, that the plaintiff is entitled to full indemnity for the injury sustained by reason of the wrongful conversion of his property; that the defendant shall not derive any benefit from his wrongful act."

The very fact that interest upon the value is allowed, which is now generally admitted by all of the authorities, is upon the theory that it is equivalent to the use of the property detained.    When the facts of the given case show that just compensation for detention or use of the property is more than the rate of interest allowed by the general rule, why should not the reason for an application of the general rule cease, and

that value of detention and use of the property be ascertained to the extent that compensates the injured party, and which results as the proximate consequences of the trespasser's wrongful act?

The very facts of this case is an apt illustration of the propriety in some cases of extending the measure of damages beyond that prescribed by the general rule. In this case the plaintiff was deprived of a wagon, worth about $70, with a use per day, as shown by the evidence, of the reasonable value of about 75 cents. The trespass was committed on the 4th day of January, 1892, and the judgment was rendered on February 26, 1892. Giving the plaintiff in this case the value of the wagon, with legal interest on that amount, would certainly not be compensation for the loss sustained by reason of the wrong committed. The use that he is deprived of is almost as valuable as the thing itself; and that value of the use with the property itself is conferred upon the wrongful trespasser, if the plaintiff is confined in his recovery to the value and interest. Such a rule would not only deprive the plaintiff of his property, but would permit a trespasser to profit by his own wrong, and it would afford a profitable enterprise to such wrongdoers in obtaining wrongful possession of property especially valuable for its use.

When the conversion is complete, the owner is not bound to receive back the property converted if tendered by the trespasser; but a tender by the trespasser and a redelivery to the owner of possession are facts that may be considered in mitigation of the damages. 4 Am. and Eng. Encycl. of Law, 125. If the property is legally tendered the owner, in as good condition as when converted, or possession is redelivered to him, we think from this time such facts may be considered in abatement of the damages for the use of the property Thus it will be seen that the trespasser has it within his power to partially undo his wrong; and when he retains possession and refuses and fails to do that which will decrease his liability for the consequences that his wrongful act have forced upon the owner, he certainly should not be heard to complain if he is charged with the value of the use of the property that belongs to another, and which he is presently enjoying.

But on the other hand, in adjusting the rule so that it may apply fairly to both parties, it may be proper to limit the amount of the recovery of the plaintiff for the use of the property to the value of the use from the time of the conversion up to the time of the recovery of his judgment; provided he has exercised reasonable diligence and dispatch in the prosecution of his demand. If by his fault the prosecution of his recovery has been unreasonably delayed, it might be inequitable to charge the defendant with the value of the use for this period. But, however, we do not decide this question at this time, as it is not necessary that we should do so in disposing of the case before us.

Upon the main question that we have been discussing, the court, in the

case of Craddock v. Goodwin, 54 Texas, 588, uses this language: "It is not perhaps possible to lay down a rigid and unbending rule, applicable to all cases. It must, of necessity, as we have said, vary with the character of the property, and somewhat with the peculiar circumstances of the case. The thing to be kept in view is, that the party shall be compensated for the injury done. Where money or goods, having a price in market, are the subject of the wrong, the value and the value of the use of which the party has been deprived, in the shape of interest, would be adequate compensation. It is but the application of the same rule which permits the recovery of the hire, as for the use of horses or work animals. Very clearly the seizure of the plaintiffs' plow animal or work horse in this case would be very poorly compensated for by the payment of interest for the time which they had been deprived of them, and then only; but it is equally clear that their value and hire, measured by the month or the year for the long period since their seizure to the time of trial, would be absurdly excessive. We think no more equitable rule can be adopted in determining the plaintiffs' actual damages than to allow in any event, if plaintiffs made out a case for actual damages, an amount not less than the value of the property, with interest to the time of trial; but the jury should also take into consideration the value of the use or hire of the animals seized for the whole time of which the plaintiffs have been deprived of them, and allow such an amount for actual damages as will compensate the plaintiffs, whether computing it by the rule of interest or that of hire or value of the use, as may seem to them most adequate to that result."

The following authorities bear upon the question, and in some degree support the views here expressed: Schley v. Lyon, 6 Ga., 535; Hair v. Little, 28 Ala., 248; Starkley v. Kelly, 50 N. Y., 677; Shartwel v. Wendover, 1 Johns., 65; Davenport v. Lodge, 80 Ill., 578; Ewing v. Blunt, 20 Ala., 694; Bank v. Hatton, 1 Nott & McC., 221; Haveland v. Parker, 11 Mich., 103; McDonald v. North, 47 Barb., 531; Craddock v. Goodwin, 54 Texas, 584; Carter v. Roland, 53 Texas, 548; Pridgin v. Strickland, 8 Texas, 427.

There are a line of cases found in the reports that limit the recovery of the owner to the value of the property and interest, upon the theory that the effect of the action seeking a recovery of damages by the plaintiff for the conversion operates as a change of the property and a sale of the chattel to the defendant, and that electing to sue for the damages, the plaintiff waives the tort and treats the conversion as a sale.

Here we encounter another legal fiction, which we think would be more honored in the breach than in its observance, and upon which some of the courts have been wrecked in their effort to award compensation to the plaintiff for the wrongs of a trespasser.

It is not the act of instituting the suit seeking damages resulting from the trespass that vests the title in the trespasser, nor is this result accomplished even upon obtaining judgment, as nothing short of compensation paid or the satisfaction of the judgment will lodge the title to the thing converted in the trespasser. The owner, by bringing his suit, does not waive any other right he may have, nor is he by that act less entitled to the enjoyment of the use of his property of which he is deprived without his consent. If he regains possession, either by his own act or by voluntary surrender by the defendant, that fact does not destroy his right to recover for his damages sustained by the original wrongful taking, but such possession regained is considered in mitigation of the damages sustained.

In Lovejoy v. Murray, 3 Wallace, 16, the Supreme Court of the United States, speaking through Justice Miller, by unanswerable reasoning, thus disposes of this question: "If we turn from this examination of adjudged cases, which largely preponderate in favor of the doctrine that a judgment, without satisfaction, is no bar, to look at the question in the light of reason, that doctrine commends itself to us still more strongly. The whole theory of the opposite view is based upon technical, artificial, and unsatisfactory reasoning.

"We have already stated the only two principles upon which it rests. We apprehend that no sound jurist would attempt, at this day, to defend it solely on the ground of transit in rem judicatum. For while this principle, as that other rule, that no man shall be twice vexed for the same cause of action, may well be applied in the case of a second suit against the same trespasser, we do not perceive its force when applied to a suit brought for the first time against another trespasser in the same matter.

"In reference to the doctrine, that the judgment alone vests the title of the property converted in the defendant, we have seen that it is not sustained by the weight of authorities in this country. It is equally incapable of being maintained on principle.

"The property which was mine has been taken from me by fraud or violence. In order to procure redress, I must sue the wrongdoer in a court of law. But instead of getting justice or remedy, I am told that by the very act of obtaining a judgment—a decision that I am entitled to the relief I ask—the property, which before was mine, has become that of the man who did me the wrong. In other words, the law, without having given me satisfaction for my wrong, takes from me that which was mine and gives it to the wrongdoer. It is sufficient to state the proposition to show its injustice.

"It is said, that the judgment represents the price of the property, and as plaintiff has the judgment, the defendant should have the property. But if the judgment does represent the price of the goods, does it follow that the defendant shall have the property before he has paid that price?

The payment of the price and the transfer of the property are, in the ordinary contract of sale, concurrent acts.

" But in all such cases, what has the defendant in such second suit done to discharge himself from the obligation which the law imposes upon him, to make compensation? His liability must remain, in morals and on principle, until he does this. The judgment against his cotrespasser does not affect him so as to release him on any equitable consideration. It may be said that neither does the satisfaction by his cotrespasser, or a release to his cotrespasser, do this; and that is true. But when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages. But it is not easy to see how he is so affected, until he has received full satisfaction, or that which the law must consider as such.

" We are, therefore, of opinion that nothing short of satisfaction, or its equivalent, can make good a plea of former judgment in trespass, offered as a bar in an action against another joint trespasser, who was not a party to the first judgment."

It is also said by some courts, that in order to hold the trespasser bound for consequential damages, he must have notice or knowledge of facts that make the article or property converted especially valuable by reason of its use to the owner. We will not undertake to say that this rule should be invoked in favor of any one who is an undoubted wrongdoer. nor will we deny that it may in some cases of technical conversion be applied. But, quere: Upon what principle is a notice necessary to a man who ex hypothesi is a wrongdoer?

Every trespasser must know the necessary natural and probable consequences of his wrongful act, and for their consequences he is liable. It follows, as a natural sequence, that he must know that property ordinarily adapted to certain purposes is valuable to the owner for that purpose; and as to the amount of value, he should know that the owner is entitled to recover what may be shown to be the reasonable value of its use. But further, in cases of this kind, where the conversion consists in the wrongful withholding from another, property to the possession of which he is immediately entitled, no notice to the wrongdoer should be necessary to affect the value, although it might affect his conduct. The present value, the actual value at the time of the conversion and wrongful withholding, is fixed by the circumstances then existing. The specific character of the property and the ordinary use to the owner are the circumstances that show its value, and for this the trespasser should be liable.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered October 18, 1893.