## BARR v. WHITE.
### No. 2211.

Court of Civil Appeals of Texas. Beaumont. March 17, 1932.

Hodges & Greve, of Nacogdoches, for appellant.

F. P. Marshall, of Nacogdoches, for appellee.

O'QUINN, J.

This suit originated in the justice court of Nacogdoches county. In said court appellee sued appellant for the conversion of two mules alleged to be worth $110, and exemplary damages in the sum of $90 for the unlawful taking of said mules and depriving appellee of their use. Upon a trial to a jury in the justice court, verdict was for appellee in the sum of $85, the value of the two mules, and $50 for the loss of the use of the mules, and $25 for the expense incurred by appellee in the prosecution of his suit for the recovery of the mules, aggregating the sum of $160. Upon this verdict, judgment was rendered for appellee for the title and possession of the mules, if to be found, and, if not, then for their value, $40 for one and $45 for the other,

and $25 for the value of the use of each, $50, and the sum of $25 as and for the expenses incurred by appellee in the prosecution of his suit, aggregating the sum of $160, and for interest thereon at the rate of 6 per cent. from May 15, 1931, the date of the judgment, together with all costs expended. Appellant appealed this judgment to the county court of Nacogdoches county.

In the county court appellee filed his amended petition alleging in substance that on December 11, 1930, he was the owner of, and had in his possession, two mules of the value of, respectively, $40 and $45, and that on said date appellant unlawfully, wantonly, and willfully took possession of said two mules, and converted same to his own use, and has since continuously unlawfully and maliciously withheld same from appellee; that appellee is a married man and the head of a family, and claimed said mules exempt from forced sale except as provided by law; that appellee is a farmer and used said mules to ride, plow, and work to a wagon; that, at the time appellant so unlawfully seized and converted said mules, he (appellee) was and now is without means to secure other mules with which to operate his farm and for family use; that each of said mules was and would have been worth the sum of $30 to appellee in its use plowing and cultivating agricultural products on his farm from said December 11, 1930, to the date of the trial, and that appellant's unlawful conversion of said mules damaged appellee in the sum of $30 for each of said mules, for which he sued; that appellant took, converted, and has since used said mules for the pretended purpose of collecting a debt he claimed two brothers of appellee owed him, and for which, if such debt existed, said mules were not liable or bound; that appellant has withheld, and now withholds, from appellee the possession and use of said mules, although appellee has made, and caused to be made, to appellant a tender of the full amount of money, if any the (appellee) might be justly due appellant; that appellant refused to deliver to appellee his said mules, unless appellee would pay him the sum of $100 cash, which sum appellee did not owe, and which said sum of $100 demanded by appellant was unjust, extortionate, and in willful disregard of appellee's rights and his rights in and to his said property.

Appellee further alleged that appellant, by his unlawful, willful and malicious taking and converting of appellee's said property, caused appellee to expend much time, labor, and money in procuring counsel to protect his interest, and in attending court and in prosecuting suit to recover his property so unjustly and willfully withheld from him by appellant, which entitled him to exemplary damages in the further sum $50, for which he sued, in addition to his actual damages

aforesaid. He prayed for judgment for the title and possession of his two mules, and in the alternative for their value, $40 and $45 respectively, as for conversion, and $60 damages for their use or rental value, and $50 exemplary damages and costs of suit.

Appellant answered by general demurrer, several special exceptions, general denial, and specially that he was engaged in merchandising, and that on June 11, 1930, appellee arranged to open with him an account of $99, and for which said sum appellee executed to appellant a note on said date, due October 1, 1930, with 10 per cent. interest after maturity, and containing the usual 10 per cent. attorney's fee clause; that on said date appellee executed a mortgage on the two mules in question and on his crop for that year to secure the payment of said note; that the contract contemplated that appellee was to pay appellant whatever amount he might purchase during the year, whether more or less than the sum named in the note, and said mortgage was executed to secure and did secure all of the indebtedness of appellee to appellant so incurred; that said mortgage provided, in substance, that appellant was to have a lien on the mules and crops and rents accruing to appellee to secure the indebtedness of appellee then owing, or any indebtedness thereafter owing, whether evidenced by the note or otherwise; that said mortgage provided that, if the mortgaged property should be neglected or otherwise handled so as to impair the security, or if the mortgagor should violate any of the conditions of the mortgage, then, in such event, appellant should have the right to take immediate possession of the mortgaged property, and to sell same at private sale without notice to the mortgagor, or to sell same at public sale in the manner prescribed by law, or mortgagee might, at his election, enforce said mortgage by suit; that about April 5, 1930, appellee arranged with appellant for Melton White and Elie White, brothers of appellee, to buy merchandise from appellant during 1930, not to exceed the sum of $110, for which said brothers and appellee executed and delivered to appellant their note of said date due September 1, 1930, and bearing interest at the rate of 10 per cent. after maturity, and providing for 10 per cent. attorney's fees; that to secure the note another mortgage was given (but it was not stated whether this mortgage was executed by appellee or by his brothers only); and that the accounts of the three were all charged together, but that the itemized account attached showed the articles that were purchased by appellee; that said account did not amount to as much as the two notes, and that, after deducting the payments, there was a balance due of $37.03; that appellee voluntarily surrendered the two mules to appellant in payment of the debt, which he in good faith accepted; and that the mules were worth only about $25.

By supplemental petition, appellee replied to appellant's answer, admitted executing the note of date June 11, 1930, in the sum of $99 but alleged that only $60 of said note was for merchandise to be purchased by him, and that $30 was for a balance due for merchandise bought in 1929, and that $9 was included in the note for interest from June 11, 1930, up to October 1, 1930, which said interest was usurious and void because at a greater rate than allowed by law; and admitted that he executed the mortgage on his crops and the two mules to secure the payment of said note; that he (appellee) had fully paid off and discharged his said indebtedness to appellant by delivering to appellant two bales of cotton weighing 422 and 430 pounds, respectively, at the agreed price of 10 cents per pound, and the seed from one of said bales of cotton; that appellant failed and refused to give him credit for the 430-pound bale of cotton and for the cotton seed, to which credits he was justly entitled; that appellant had refused to render him, appellee, an itemized statement of his personal account; that after appellant had unlawfully taken possession of the two mules, he (appellee) had three times made, and caused to be made, a full tender of any amount, if any, he might owe appellant, and demanded the return of his said mules, but that appellant refused to accept the tender or to return him his mules, and that by reason of same he pleaded a full and complete satisfaction and payment of said indebtedness claimed by appellant; that appellant unlawfully and willfully took possession of his (appellee's) said mules, for the purpose of collecting a balance appellant claimed appellee's two brothers owed him, and for which said balance, if any such there was, his (appellee's) mules were not pledged in any manner whatsoever; that said mules were the exempt property of appellee, and not in any way liable for said debt of his said brothers, which appellant well knew, and again pleaded for the recovery of the title and possession of the mules, or for their value, and for damages in the sum of $30 each for the loss of their use, and $50 as exemplary damages for appellant's unlawful taking of same.

Appellee further denied that he agreed with appellant to surrender said mules in discharge of any indebtedness, and said that he did not owe appellant any sum, and that, if it should be that any amount was unpaid, he tendered payment of same which was refused by appellant, but that appellant unlawfully took possession of, and converted to his own use, appellee's two mules, and unlawfully and willfully refused, and still refuses, to return same to appellee, to his damage as aforesaid.

The case was tried to a jury upon special issues, all of which were answered in favor

of appellee, and upon which said answers judgment was rendered in favor of appellee for the title and possession of the mules, and in the alternative for their value, and for damages in the sum of $60 for their use or rental value, and for $50 as exemplary damages for the unlawful and willful taking of the mules, aggregating the sum of $195 less the sum of $20.02, the balance found due appellant, together with all costs of suit. This judgment was against appellant and his sureties on his appeal bond. Motion for a new trial was overruled, and the case is before us on appeal.

Appellant's motion for a new trial contained thirty-eight assignments of error as grounds for a new trial. In his brief he presents some twenty odd assignments taken from said assignments urged in his motion for a new trial. We shall not discuss them in the order of their presentation.

■ All of appellant's assignments complaining that the court erred in not defining the terms "cash market value" and "reasonable fair cash market value" are overruled. The record discloses that each of the special issues in which said terms were used was prepared by appellant and given by the court in the identical language, in which it was requested. This being true, appellant has no right to complain that the issue was not correct or was incomplete, for, if the matter complained of is error, it was invited, and affords appellant no grounds for reversal. The rule that, when a party has filed and urged his objections to the court's charge, where the court gives his own charge and not the one prepared and requested by the party, has no application where the court accepts a requested special charge and gives it in the very language requested. To give such rule application in such cases would be to permit a party to submit and secure the giving of a known defective charge, and then take advantage of his invited error.

■ The assignments that the court erred in not defining the expression "value for farm purposes" in special issues relative to what was the rental value of the mules for the period of time involved are overruled. The expression is not a legal technical term, nor has it a fixed legal signification. The expression is one of common ordinary use, easily understood, not calculated to confuse or mislead the jury and did not require defining.

■■ The assignment that the court erred in submitting special issue No. 5 to the jury, inquiring, "What do you find, by a preponderance of the evidence, at the time Barr got the mules, plaintiff White owed defendant Barr on the open account?" is overruled. This issue was requested by appellant, and, as requested, given by the court, which was proper because appellee contended that he

owed nothing and appellant contended that he did. It was a matter of fact to be determined by the jury. The jury found with appellee on the issue.

Special issue No. 6 was: "What do you find at the time Barr got the mules from White was the amount of the note due Barr by White, excluding interest and attorney's fees?"

The giving of this special issue is assigned as error. This assignment is overruled. Appellant requested this issue to be submitted, and the court gave it as requested. This is shown by the court's qualification to appellant's objections and exceptions to the charge. Furthermore, the charge was proper and demanded by both the pleadings and the evidence. Appellee contended that, if he was given credit with and for the payments he had made, he would not owe anything on either the open account or the note. He pleaded and proved that in the note for $99 the sum of $9 was included for interest from the date of the note, June 11, 1930, to its due date, October 1, 1930, and that such interest charge was usurious and unlawful. He also contended that he was not given credit for one bale of cotton weighing 430 pounds at the agreed price of 10 cents per pound, nor was he given credit for the seed of one bale of cotton. The note was only to cover the actual amount purchased by appellant, and the mortgage given was to secure the actual merchandise purchased by appellee, whether more or less than the note. So, it is seen, the issue was not only proper, but necessary. Appellant insists the matter was not one of dispute, but that the amount due was without dispute $37.03, and the submission to the jury not necessary, and therefore erroneous. The jury heard the testimony, and found in answer to special issue No. 5 that appellee owed appellant nothing on the open account, and, in answer to special issue No. 6, there was due appellant on the note the sum of $20.02. So there must have been some dispute in the evidence, and, the jury being the exclusive judges of the weight of the evidence and the credibility of the witnesses, they found against appellant's contention, and we think the findings are abundantly supported by the evidence.

■ The assignments that the court erred in submitting to the jury the issue as to the value of the mules to appellee for the time detained, for farm purposes, are overruled. The damages sustained by appellee occasioned by the loss of the use of his mules was the value to him of their services for the time. This was a matter of fact, and was properly submitted to the jury. But it is urged that there was not evidence to support the finding. The finding has ample support in the record.

The various assignments to the action of

the court in admitting and excluding certain testimony are all overruled. We think the court ruled correctly in the several instances, but, if there was any error, it was harmless under rule 62a for the Courts of Civil Appeals.

■■ The tenth assignment of error is that the court erred in submitting to the jury special issue No. 7, which reads: "Did C. P. Barr unlawfully and wilfully take possession of and convert said mules to his own use?"

Among the objections to this charge are:

(a) The court did not instruct the jury whether appellant acted in good faith, under an agreement with appellee, to take the mules. This objection is not well taken because special issue No. 1 requested by appellant and given by the court was: "Do you find, by a preponderance of the evidence, that the plaintiff, Luther White, consented for the defendant, C. P. Barr, to take the mules," and to which the jury answered, "No." This finding answered the question of good faith raised by appellant.

(b) Because the court assumed in said charge that appellant unlawfully and willfully converted the mules. The charge is not subject to this criticism.

(c) Because the court did not define the words "unlawfully," "willfully," and "convert." These objections must be overruled. The evidence shows that appellant went to the home of appellee when appellee was away and took the mules in question out of an inclosure of appellee without appellee's knowledge or consent. Appellee's mother, who was living with him at the time, requested appellant not to take the mules, but appellant proceeded to do so, and carried them away. After taking the mules, appellant put them to use in constructing some terraces on his own premises, and then turned them over to a tenant of appellant, and had the tenant to hold and use them. Appellee all the time contended that he owed appellant nothing, either on open account or as a balance on the note he had given and to secure the payment of which he had given appellant a mortgage on the mules. After appellant had so taken the mules, and while appellee was still contending that he owed appellant nothing, he demanded of appellant an itemized statement of his account, which was not furnished. After this, appellee had three different persons to go to appellant and to demand an accounting for and on behalf of appellee, and to then and there tender to appellant in money any sum that appellee might be owing, if at all, but which accounting and tenders were refused. Lacey Pleasant was the first person appellee sent to appellant to find out what, if anything, he owed appellant and to pay same. This witness testified that he told appellant that he had come to pay whatever appellee owed, and to this appellant replied, "I have made other arrangements." The witness then told appellant that he had come to get the mules, and asked appellant how much appellee owed him, and how much did appellant have against the mules, to which appellant again said, "I have made other arrangements." Adolphus Stanley was the second person appellee sent to appellant to find what, if anything, he owed appellant and to pay same. This witness testified that he went to appellant and asked him how much appellee owed, to which appellant replied, "I just could not tell you without looking at my books." The witness then asked appellant "if he minded looking at his books," and said to his best recollection, appellant replied it was "thirty-three dollars and some odd cents." The witness then testified: "I told him that I had come up to pay it and he said 'no, I have made other arrangements.' I asked him if he meant to tell me that he did not intend to take the money, and told him that I had the money with me to pay him. I said: 'they are going to sue you, Mr. Barr,' and he said 'let them sue, it does not make a damn bit of difference with me, I have got as much money to spend as any of the rest of them.'"

Judge F. P. Marshall, attorney for Luther White, appellee, testified that he went to see appellant and told him that he (Marshall) was representing White, and that he wanted to get possession of the mules, and asked how much appellee owed him, and appellant told him that he (appellant) would answer in court. The witness further testified that he then told appellant that he nor his client wanted court proceedings, and that, if appellee owed appellant anything, he (witness) would pay it. To this appellant again said, "I will answer you in court," and finally told witness that $100.00 was the least sum for which he would let the mules go. When appellant was on the stand testifying in his own behalf, on cross-examination, in answer to how much Luther White, the appellee, owed him, he answered $23.03. On direct examination he testified that Luther White owed him $37.03, and that, when he took the mules, he charged that amount off of his books, saying that was the agreement between them for him to do so. In explanation of what he meant when he told one of the parties sent to him by appellee that he (appellant) "had made other arrangements," he said that he had rented land to some tenants and turned the mules over to them to work, and "had decided to keep the mules." Appellant admitted that he had refused the several tenders of payment, and that he still had the mules and refused to let appellee have them, although appellee was willing to pay whatever sum, if any, he might justly owe appellant.

■ These acts on the part of appellant show, as a matter of law, an unlawful and

willful taking of appellee's property. It was not necessary to submit to the jury whether said accounts constituted an unlawful and willful taking, for, as we have said, they were such as a matter of law. That being true, the issue, though answered in the affirmative by the jury, was immaterial and not necessary, and therefore it was not necessary to define the terms complained of. But appellant insists that the mortgage gave him the right, if the debt was not paid, to take possession of the mules and to sell them at private or public sale to satisfy his debt, and hence his action in taking the mules could not have been either unlawful or willful. The mortgage did have such clause, but it was a matter of dispute whether appellee owed appellant anything, and, over the objection of appellee, appellant could not, because of said provision in the mortgage, forcibly take possession of the property without appropriate court proceedings. Moreover, the provision in the mortgage did not authorize appellant to take the property and convert the whole of it to his own use, but to take the property, if at all, and then sell same and apply sufficient of the proceeds to the extinguishment of the debt. According to appellant's contention, there was but $37.03 due on the accounts of appellee and his two brothers, for which appellee had become surety, and only $23.03 on appellee's account (the jury found $20.02 balance on the note), and the mules were ascertained to be worth two or three times that much, and still appellant insists that he acted in good faith, in the absence of appellee's consent, in forcibly taking and appropriating the value of both mules to the payment of his debt. Appellant did not sell the mules, but in his own language "decided to keep the mules." This he could not do, for the doctrine that the legal title vests in the mortgagee after breach of its conditions does not obtain in this state, and, under the more generally accepted rule, foreclosure either in accordance with the terms of the mortgage, or in the manner prescribed by law, is necessary to cut off the mortgagor's title.

The assignment that the submission to the jury of special issue No. 8 was error because it permitted a double recovery cannot be sustained. This insistence is based upon the contention that, as an issue as to the value of the use, or rental value of the mules had been submitted and a finding against appellee for the value of their use, another finding against appellant for damages for the unlawful taking of the mules would be a double recovery for the same cause of action. This contention is not sound. The first, or the recovery for the loss of the use of the mules, was for the actual damage suffered by appellee by reason of the loss of the use of the mules, and the latter, or damages for the unlawful and willful taking of the mules, was for exemplary damages, or damages by way of punishment for the unlawful taking of the property. The awards are not in any sense for the same right to recover.

All of appellant's assignments have been considered, and none of them show reversible error, and are all overruled. The judgment should be affirmed, and it is so ordered.

Affirmed.