## UNIVERSAL CREDIT CO. v. RATLIFF.

### No. 1311.

Court of Civil Appeals of Texas.  Waco.
Jan. 19, 1933.

Henry P. Edwards, of Dallas, for appellant.

Oxford & McMillan, of Stephenville, for appellee.

GALLAGHER, Chief Justice.

This appeal is prosecuted by Universal Credit Company, a corporation, from a judgment of the district court awarding a recovery against it in favor of Giles Ratliff in his capacity as administrator of the estate of D. R. Ratliff, deceased, of actual and exemplary damages for conversion of a Ford truck belonging to said estate. D. R. Ratliff, on August 1, 1931, purchased the truck involved in this case for the sum of $821.50. He paid $257.50 of the purchase price in cash, and agreed to pay the remainder in twelve monthly installments of $47 each, commencing September 1, 1931. He secured the payment of deferred installments by executing a so-called sales contract, which provided that title should not pass to him until all sums due thereunder were paid in cash; that maturity might be accelerated by the seller in various contingencies not necessary to recite; that in event of such acceleration, the seller might, without process or demand, enter any premises where said truck might be found, remove the same, and hold possession thereof without responsibility or liability. Broad powers of sale were also conferred on the seller by the terms of said instrument, and it was expressly stipulated therein that the rights of the seller thereunder should pass to his as-

signee. D. R. Ratliff paid the installments due on the 1st days of September and October, respectively. He died some time during the month of October. Appellee was duly appointed administrator of his estate, qualified as such January 11, 1932, and promptly returned an inventory of the property belonging thereto on the same day. Said truck was included therein. Appellee took actual possession of said truck. Shortly thereafter a representative of appellant called on appellee and demanded that he store said truck, and informed him that if he did not store it, he, the representative, would do so himself. Said representative then went to the residence of appellee, and, in his absence, seized said truck and started to remove the same. Appellee arrived before he had gotten the truck off the premises, and earnestly protested against such seizure and removal, but without avail. Said representative stored the truck in a garage at Glen Rose. Appellant thereafter, as assignee of said contract of purchase, presented to said administrator its claim for the balance due thereon, and for establishment of its lien on said truck. He rejected the same on the ground that appellant had converted the truck and had damaged the estate in a sum in excess of the amount due, as shown by said claim.

Appellee, in his capacity as administrator, then filed this suit against appellant, and alleged that the acts of appellant's representative in the premises constituted a conversion of said truck and sought to recover actual and exemplary damages therefor. Appellant alleged that it had taken peaceable possession of said truck, and stored the same to preserve its value pending administration on the estate of the deceased. It pleaded the terms of said contract of purchase in justification of its acts, and denied such conversion. It also pleaded its debt in reconvention, and sought recovery for the amount thereof, with foreclosure of lien.

The case was tried to a jury. Appellant, at the close of the testimony, requested an instructed verdict, which was refused. The case was then submitted on special issues. The jury found in response thereto, in substance, that:

(1) The reasonable market value of said truck was $500.

(2) The value of the use of said truck to appellee as administrator for the purpose of marketing farm products belonging to said estate was $100.

(3) Appellant's representative, in taking said truck from the possession of appellee, acted willfully and maliciously.

(4) Exemplary damages in the sum of $200 should be awarded.

The court deducted from the aggregate sums awarded appellee by the findings of the

jury the amount of appellant's claim against the estate for unpaid purchase. money for said truck, and rendered judgment in favor of appellee as such administrator, and for the benefit of said estate against appellant for the remainder in the sum of $259.50, together with costs of suit.

## Opinion.

■ Appellant complains of the refusal of its request for a peremptory instruction. It contends in that connection that its action in seizing said truck and removing and storing the same was expressly authorized by the terms of the contract of purchase, as hereinbefore recited. Appellee insists that all authority to enforce the collection of the unpaid purchase money by summary action without resort to legal proceedings was revoked by the death of the purchaser, the appointment and qualification of appellee as administrator of his estate, and his possession of said truck under such appointment. Appellee further insists that the circumstances attending the seizure and removal of said truck raised an issue of whether such action constituted a "peaceable," as distinguished from an aggressive and hostile, taking. Appellee, as before shown, was in actual possession of the truck in his capacity as administrator of the estate of his father, to which estate said truck belonged. Appellant, as the holder of said contract of purchase, was, under the express terms of the statute, merely a creditor of said estate, with a chattel mortgage lien on the truck to secure its debt. Revised Statutes, art. 5489; Harling v. Creech, 88 Tex. 300, 301, 302, 31 S. W. 357; Milburn Mfg. Co. v. Peak, 89 Tex. 209, 211, 34 S. W. 102; Kuntz v. Spence (Tex. Civ. App.) 48 S.W.(2d) 413, 417, par. 3 (writ granted on other grounds). The collection of secured debts and the enforcement of liens on the incumbered property to satisfy the same are expressly provided for in our probate procedure. 14 Tex. Jur. p. 41, § 296, and authorities cited in notes thereto. As said, in substance, by our Supreme Court at an early day, the act of Providence which removed the debtor beyond the jurisdiction of earthly courts released his property from the active operation of mortgages and other liens, and transferred his estate, with its claims and liabilities, to a jurisdiction specially organized for the settlement thereof. McMiller v. Butler's Adm'x, 20 Tex. 402, 403, 405. Administrations upon the estates of deceased persons are controlled and regulated by the provisions of our statutes on that subject. Such provisions are very comprehensive. The rights of creditors as declared therein and the procedure prescribed for the enforcement of such rights are materially different from the procedure prescribed for the enforcement thereof in ordinary judicial proceedings. Article 3314 of our Revised Statutes, so far as applicable, pro-

vides, in substance, that when a person dies intestate, all his estate shall vest immediately in his heirs at law, but, with the exception of exempt property, shall be liable and subject in their hands to the payment of the debts of the intestate, and that upon the issuance of letters of administration, the administrator shall have the right to the possession of the estate as it existed at the death of the intestate, and shall hold such estate in trust, to be disposed of in accordance with law. Appellee, therefore, in taking possession of said truck, rightfully exercised authority specifically conferred upon him by the terms of said article. Morrell v. Hamlett (Tex. Civ. App.) 24 S.W.(2d) 531, 534, pars. 1 and 2. Our probate statutes not only provide that the administrator of an estate shall be entitled to the possession of all the property belonging thereto, but further provide for the sale of such property by him for the purpose of paying debts and charges, and the order in which the proceeds of such sales shall be applied. See especially, in this connection, Revised Statutes, articles 3533 to 3536, inclusive; 14 Tex. Jur., pp. 523 et seq., §§ 684 to 687, inclusive, and authorities cited in notes. Such statutory proceedings are wholly inconsistent with the contractual stipulations entered into by the decedent in his lifetime for the summary seizure and sale of the truck and the application of the proceeds of such sale, and the stipulations relied on by appellant were revoked and superseded by the administration on his estate. Whitmire v. May, 96 Tex. 317, 72 S. W. 375, 376; Low v. Felton, 84 Tex. 378, 385, 19 S. W. 693; 14 Tex. Jur. 525 et seq., § 685, and authorities cited in notes 12 and 13. Since the seizure of the truck by appellant was unauthorized, consideration of the circumstances attending such seizure is not necessary in disposing of appellant's contention that the court erred in refusing a peremptory instruction in its favor, and such contention is here overruled.

■■ Appellant complains of the action of the court in submitting issue No. 2, wherein the jury were asked to find the value of the use of said truck to appellee as administrator for the purpose of marketing farm produce belonging to the estate, and in including the finding of the jury that the value of such use was $100 in the judgment rendered against it herein. It contends in this connection that the proper measure of appellee's damage was the value of the truck at the time of conversion, with legal interest thereon to the time of trial, and that the value of the use thereof could not be substituted for such interest as an element of his damage. Appellant made no such objection to the submission of said issue, nor did it present such contention as ground for modification or correction of the judgment in its motion for new trial. Such contention is presented for the first time in the brief filed by appellant in this court. It can-

not therefore constitute ground for reversal. Our courts have, however, in many cases, allowed as an element of damages for conversion the value of the use of the property from the date of conversion to the time of trial, in lieu of interest, when such allowance was necessary to properly compensate the injured party for the loss sustained. Barr v. White (Tex. Civ. App.) 47 S.W.(2d) 910, 913, par. 5; Block Motor Co. v. Melia (Tex. Civ. App.) 247 S. W. 666, 669, par. 9; Moore v. King, 4 Tex. Civ. App. 397, 23 S. W. 484, et seq.; Brown v. Guaranty Securities Co. (Tex. Com. App.) 265 S. W. 547, 550, par. 4; Waller v. Hail (Tex. Civ. App.) 46 S. W. 82; Byers v. Shelton (Tex. Civ. App.) 282 S. W. 635, 637, par. 2; Pridgin v. Strickland, 8 Tex. 427, 434, 435, 58 Am. Dec. 124. Appellant further contends in this connection that the testimony is insufficient to sustain such finding. Appellee testified that at the time of the seizure of said truck he had on hand belonging to said estate 2,000 bales of hay and 450 bushels of peanuts; that he had already contracted to sell the same in Fort Worth, and was to begin hauling them there the next day. He further testified that the distance from his home to Fort Worth was 50 miles; that it would have cost 15 cents a bushel to hire said peanuts hauled; that he had sold the same in Forth Worth for 45 cents a bushel; that there was no nearer market; that he had no other way of transporting the same to Fort Worth, except by the use of said truck; and that he was compelled to sell said peanuts on the place for 32½ cents per bushel. He further testified that the reasonable market value of hay in Fort Worth at that time was 40 cents per bale; that it would have cost 15 cents per bale to hire it hauled; that there was no nearer market; that he had no other way of transporting the same, and was forced to sell it on the place for 17½ cents per bale. He further testified that when appellant's agent demanded that he surrender said truck for storage until the debt was paid, he informed him that the use of said truck was necessary in order to transport said products to market. We cannot say that the finding of the jury on said issue was without support in the evidence.

Appellant complains of the action of the court in submitting special issue No. 3, wherein the jury were asked to find whether the taking of the truck from appellee's possession by appellant's representative was done willfully and maliciously; in accepting the affirmative finding of the jury thereon, and in including the sum of $200 awarded by the jury as exemplary damages, in the judgment rendered against it herein. It contends in this connection that the testimony was insufficient to justify the submission of the issue of willful and malicious taking, and to support the affirmative finding thereon which the jury returned. The court instructed the jury in connection with the submission of said issue as follows: "By the term 'willfully and maliciously' is meant the intentional doing of a wrongful act without just cause or excuse; that is, if an act is intentionally done without just cause or excuse for believing it to be right or legal, then such act is willfully or maliciously done."

The testimony shows that appellant was advised by letter from appellee's attorneys about the middle of December, 1931, that appellee had made application for appointment as administrator of his father's estate, and that a hearing thereon was expected in about two weeks. Appellant replied thereto demanding that appellee pay the past-due installments, and personally guarantee the payment of the remainder of the debt, or, in the alternative, that he place the truck in storage. In a subsequent letter appellant waived its demand that appellee personally guarantee the payment of its debt, but demanded that the truck be immediately placed in storage, and declared its purpose to contest appellee's appointment unless he did so. Appellee's attorneys advised appellant by letter dated January 19, 1932, of appellee's appointment and qualification as administrator, asked it to present its claim according to law, and assured it that such claim would be allowed and paid in due order as soon as possible. Appellee testified that shortly thereafter he was approached by appellant's representative, Halla, in the city of Granbury; that Halla asked him if he had the truck there and he told him no, that it was at his home; that Halla said: "I might want to look at it in a few days to ascertain and report its condition"; that Halla remarked in that connection that appellee seemed to be a pretty nice fellow; that he had lots of trouble with some people; and that one fellow, when he went to get his car, got mad and the judge gave him thirty days in jail. Appellee assured him that he didn't see any use of having trouble as he intended to pay as soon as the court ordered him to do so. He further testified that about an hour later Halla approached him and said that he had talked with appellant by phone and had been instructed to store that truck; that he remonstrated and said he had a good shelter for it at home; that Halla peremptorily ordered him to take it to Lane Brothers Garage and leave it until the estate settled for it; that he stated in reply that he was depending on the truck to haul the peanuts and hay aforesaid to market in, and that storing would ruin him; that Halla replied that he, appellee, would have to store the truck because the company ordered him to do it; that he again demurred, and Halla said he would have to store the truck if appellee didn't, and that he forbade Halla to take the truck; that Halla asserted that appellee had nothing to do with the truck, it belonged to his father and he was dead. Halla, in leaving, indicated

that he was going to Stephenville. The testimony shows that, instead of doing so, he secured an assistant, went immediately to appellee's home, entered his premises and located the truck; that he found it locked and demanded that appellee's wife surrender the key to it; that she was unable to find it; that he then disconnected the wiring from the lock and rearranged it so as to start without a key. Appellee testified that he arrived at home before Halla got the truck off his premises; that he protested vigorously, and insisted that he was under bond for the safe-keeping of said truck; that Halla announced he was going to take the truck anyway, and kept on working to get it started. Halla was a trained athlete. Appellee, angered by Halla's defiant attitude and actions, and apparently deeming himself helpless to prevent the unlawful and forcible invasion of his possession by physical encounter, went to the house after his gun, but his wife dissuaded him from using it. Halla and his assistant got the truck going about that time, and immediately left with it. Though the actual seizure was made by a mere employee of appellant, we have in this connection set out the circumstances thereof, because of appellant's insistence in its brief that neither the acts of its credit manager which culminated in its peremptory order to such employee to make such seizure, nor the acts of such employee in executing such order, raise an issue of willful and malicious taking, as that term is applied in determining the propriety of awarding exemplary damages.

Appellant does not assail the definition of the words "willful and malicious" as given the jury by the court in his charge. Neither does it contend that a willful and malicious taking by it through its agent and representative, Halla, would not justify an award of exemplary damages. The charge of the court in this case, so far as the issue of exemplary damages is concerned, is substantially in accord with the rule expressed in Evans v. McKay (Tex. Civ. App.) 212 S. W. 680, 685, from which we quote as follows: "Exemplary damages are awarded as matter of sound public policy in punishment of the guilty one for malicious acts, and not as compensation. The amount awarded goes to the complaining party merely because assessed in his suit. 'In a legal sense, any unlawful act done willfully and purposely to the injury of another is, as against that person, malicious.' Culbertson v. Cabeen, 29 Tex. 247."

Appellant limits its contention in this connection to an insistence that the evidence is insufficient to show that its intentional and wrongful taking of the truck from the possession of appellee was without just cause or excuse for believing such action to be right or legal. More specifically stated, it contends that the testimony shows that such taking

was under a mistake of law, and in the assertion of a supposed right to do so, and without any actual wrongful intention. The testimony above recited shows that appellant was advised at the outset of the controversy over the collection of its debt and the custody of the truck pending such collection, that the original purchaser of such truck was dead, and that appellant had filed an application for appointment as administrator. The testimony further shows that it was subsequently advised that said appointment had been made, and that appellant had duly qualified as such; that appellant, during all of such time, persisted in a series of unwarranted and oppressive demands, all of which finally culminated in its sending Halla with imperative instructions to seize said truck and deprive appellee of its possession, which instructions he executed in the manner above shown. The testimony raised an issue of willful and malicious taking by the express orders of appellant's credit manager; and such issue was therefore properly submitted to the jury for determination. The affirmative finding of the jury thereon is not without support in the evidence. Gordon v. Jones, 27 Tex. 620, 622, 623; Jackson v. Poteet (Tex. Civ. App.) 89 S. W. 980, et seq.; Werkheiser-Polk Mill Co. v. Langford, 51 Tex. Civ. App. 224, 115 S. W. 89, 91.

The judgment of the trial court is affirmed.